PHILIP H. REID et al., Appellants, v. THE LANCASTER FIRE INSURANCE COMPANY OF LANCASTER, PENN., Respondent.

Defendant issued a policy of fire insurance insuring a steamship, while plying certain waters, "or while lying at anchor." The policy contained a clause declaring that if "the premises shall be vacated * * * and shall remain unoccupied for the space of twenty days," unless with the written assent of the company, the policy shall cease. In an action upon the policy it appeared, without dispute, that the vessel was burned while hauled upon the beach near high water, and at low tide lying a mile from

the water. Plugs had been taken out of her hull to permit the water to run in and out, and her furniture, awnings, etc., had been removed. To prevent her moving she was fastened to iron rails at the bow and on one side of her stern and to her anchor on the other. She was wholly unoccupied at the time of the fire, and had been for more than twenty days, except that workmen came occasionally for the purpose of making repairs. *Held,* that the complaint was properly dismissed; that the vessel was not lying at anchor, and was unoccupied within the meaning of the policy.

It was claimed by plaintiff that the phrase "lying at anchor" was a technical phrase, and evidence was offered to show its meaning, which was excluded. *Held* no error; that the language used could not contemplate a liability when the vessel was practically, for the time being, laid up and abandoned.

(Argued October 27, 1882 ; decided November 21, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 14, 1880, which affirmed a judgment in favor of the defendant, entered upon an order dismissing plaintiffs' complaint on trial.

This action was upon a policy of fire insurance, issued by defendant to plaintiffs, the material portions of which as well as the facts are stated substantially in the opinion.

*John H. Bergen* for appellants. Whether the vessel was "lying at anchor" was a question of fact and should have been submitted to the jury. (1 Greenl. Ev., § 278.) The meaning of particular words in a written instrument may be determined by parol evidence. (8 Metc. 576, 577.) General words used in a technical sense may be explained by those conversant with such technical or peculiar use of language. (2 Phillips' Ev. 708, 709, 710.) It is competent to receive explanatory evidence where technical words or peculiar terms are used. (May on Ins. 182, 188, §§ 175, 179, subd. 3 ; *Westfall* v. *Hudson R. Ins. Co.,* 2 Duer, 490 ; *Wall* v. *How. Ins. Co.,* 14 Barb. 383 ; *How* v. *Mut. Safety Ins. Co.,* 1 Sandf. 137 ; *Astor* v. *Union Ins. Co.,* 7 Cow. 202, etc. ; 1 Pars. on Mar. Ins. 77, § 4, title "Technical or Peculiar Words;" *Macy* v. *Whaling Ins. Co.,*

9 Metc. 363; *Perach* v. *Dickson,* 1 Mason, 10; 1 Pars. on Mar. Ins. 127, note 2; *Pitney* v. *Ins. Co.,* 65 N. Y. 6; *Hinds* v. *Schenectady Ins. Co.,* 11 id. 554.) Whether the vessel was unoccupied at the time of the fire was a question of fact, and should have been submitted to the jury as a question of fact. (*Browning* v. *Home Ins. Co.,* 71 N. Y. 508; *Whitney* v. *Black River Ins. Co.,* 72 id. 117.)

*George S. Hamlin* for respondent. Evidence as to the meaning of the words "lying at anchor" in the policy of insurance was properly rejected. (*Brown* v. *Brown,* 8 Metc. 576; 1 Greenl. Ev., § 278.) There being no ambiguity in the expression apparent from the contract or the subject-matter, it was not permissible to create an ambiguity by extrinsic parol evidence. (*Auburn City Bk.* v. *Leonard,* 40 Barb. 137; *Pohalski* v. *Mut. L. Ins. Co.,* 36 N. Y. Sup. Ct. 252; Broom's Legal Max. 456 [6th Am. ed.]; 1 Greenl. Ev., § 292; *Blackett* v. *Royal Exch. Ass. Co.,* 2 C. & J. 250.) To justify departure from the ordinary meaning of its language, a usage of language must be shown, from which the court may see that the phraseology used had, in the intent of the parties adopting it, a special or technical meaning. (Abb. Trial Ev. 485; *Littlefield* v. *Littlefield,* 28 Me. 180; *Pohalski* v. *The Mut. L. Ins. Co.,* 36 N. Y. Sup. Ct. 234; 56 N. Y. 640.) The complaint was properly dismissed, on the ground that the vessel was not lying at anchor. (*Cutts* v. *Hussey,* 3 Shepley, 237; *Doane* v. *Willcut,* 5 Gray, 328; *Littlefield* v. *Littlefield,* 28 Me. 180; *Stevens* v. *C. Mut. Ins. Co.,* 26 N. Y. 399; *Boynton* v. *Clinton & Essex Ins. Co.,* 16 Barb. 254; *Bryce* v. *Lorillard F. Ins. Co.,* 55 N. Y. 240, 244.) The complaint was properly dismissed on the ground that the vessel was unoccupied at the time she was burned, and had been for more than twenty days previous. (*Whitney* v. *Black R. Ins. Co.,* 72 N. Y. 120; *Stettiner* v. *Granite Ins. Co.,* 5 Duer, 594.)

FINCH, J. The defendant insured the steamer Oceanus "while plying Jamaica bay, bay and harbor of New York,

and such other ports and places as it may be necessary to send her during the continuance of this policy, or while lying at anchor, or at any bulk-head, dock or pier." The policy contained a further provision, that if " the premises shall be vacated in whole or in part, and shall remain unoccupied for the space of twenty days," the insurance should cease unless upon notice the company assented in writing. The vessel was burned while beached at Canarsie, and was a total loss. Her furniture, awnings, life-preservers and bell had been removed; she was hauled upon the beach at high tide, her bow being within fifty to seventy feet of high-water mark, and at low tide lying a mile from the water; plugs were taken out from her hull so as to permit the water to enter and run out with changes of the tide; she was fastened at the bow to iron rails, and at the stern to such rails on one side, and to her anchor at the other, to prevent her movement in storms and from the wind, and hold her more firmly to the beach; at the time of the fire she was wholly unoccupied and had been so for many weeks, except so far as workmen came occasionally for the purpose of making repairs. Upon this state of facts the plaintiffs were nonsuited; the court holding that the vessel was not " lying at anchor," and was unoccupied at the time of the fire. The plaintiffs excepted, and then asked that these questions be submitted to the jury as questions of fact, which was refused.

It is now claimed that whether the vessel was " lying at anchor," and was unoccupied, were questions of fact which were erroneously withheld from the jury. There was no dispute about the facts, relative to the situation and condition of the vessel, but it is argued that the phrase " lying at anchor " has a technical meaning and is a technical phrase, requiring explanation by evidence, and so subject to the judgment and control of the jury, and evidence was offered to show its meaning, which was objected to and rejected. We see no just reason for holding that the words " lying at anchor " or " unoccupied," as used in the policy, have any other than their ordinary and familiar meaning, or are used in any special sense. The terms of the policy indicate very plainly an intention to limit the

insurance to a particular period during the running of the policy. The risk is assumed "while" the vessel is plying in certain waters, or lying at anchor, or at any bulk-head, dock or pier, and while not unoccupied for more than twenty days. The risk was taken while the vessel was in use, or ready for use and awaiting employment, or if laid up for the want of it, at least occupied. The language certainly did not contemplate a liability when the vessel was beached, when its furniture was removed, when it had no occupant, and practically for the time being was laid up and abandoned. It is easy to see that in the latter case the risk is materially different. While the vessel is lying at anchor and occupied, approach to it is not so easy nor danger of fire so great, as when lying upon the sands of the beach, apparently stranded and abandoned, approachable at low tide by even casual wanderers, and tempting to mischief and trespass. The fact that at high tide she might have been afloat for an hour, and that one of her cables was fastened to an anchor to prevent her movement in storms, does not, in the ordinary sense of the phrase, as used in the policy, amount to " lying at anchor." That properly applies to vessels afloat, unless when temporarily or incidentally aground, ready to move, and usually certain to move if the anchor is lifted, and held by it within the range of the cable's swing. It does not apply to a vessel hauled up upon the beach, lying upon the sands, with holes in the hull to let the water in and out, and at low tide a mile from the water's edge, although more firmly held to its place on the beach by a cable and anchor. The mode of securing the vessel indicated not use, or readiness for use, or the care and oversight which naturally belongs to and accompanies use, but abandonment and desertion. The vessel was beached, not casually or incidentally aground, but drawn up upon the sands, obviously to be kept stationary by its weight upon the beach, the plugs withdrawn to prevent its floating as far as possible, and the sole purpose of the cable and anchor to prevent its shifting position in its bed. It would be an unfair and strained construction to say that a vessel so situated was lying at anchor. Added to that is the further fact that it

was wholly unoccupied.   The occasional presence of workmen was under a permission in the policy which specially allowed repairs.   While the meaning of occupancy must necessarily vary in its application to different subjects of insurance, there was in the present case nothing which conformed to that requirement of the policy.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.