(Decided December 6th, 1895.)

---

THE AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, N. Y. *vs.* JAMES K. HAMILTON, USE OF J. T. C. HOPKINS AND W. H. HARLAND.

*Fire Insurance—Vacant or Unoccupied House—Forfeiture of Policy—Entirety of Contract of Insurance—Loss Payable to Mortgagee.*

A policy of fire insurance upon a dwelling house provided that it should be void if the house became vacant or unoccupied and so remained for ten days, without the written consent of the insurer endorsed on the policy. Some months before the fire occurred which destroyed this house, the occupant moved to another dwelling across a highway with his family, taking most of his furniture. Some members of the insured's family and some of his employees occasionally slept in the house described in the policy, but meals were not cooked or served there. Provisions were stored in the house and the wife of the insured went there daily. *Held*, that at the time of the fire the house was vacant or unoccupied within the terms of the policy and the insurance was avoided.

Under this provision in a policy, an actual use of the house as a place of abode or habitation is what the insurer contemplates and what the policy designs to secure. An occasional sleeping in the house does not constitute an occupancy of it.

The above-mentioned policy also covered personal property contained in the house. *Held*, that the forfeiture of the policy as to the risk upon the house also involved forfeiture of the policy as to the personal property, since the contract was entire.

The fact that by endorsement on the policy the loss was made payable to certain mortgagees does not prevent a forfeiture for violation of the condition as to occupancy of the house.

Appeal from a judgment of the Circuit Court for Harford County (WATTERS, J.)  The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., MCSHERRY, FOWLER and BOYD, JJ.

*Frank E. Gorrell* and *Thomas H. Robinson,* for the appellant.

*Stevenson A. Williams* and *William H. Harlan* (with whom was *J. Thos. C. Hopkins* on the brief), for the appellee.

MCSHERRY,. J., delivered the opinion of the Court.

On the eleventh of June, 1889, the appellant, a fire insurance company, wrote a policy of insurance upon the dwelling house, barn and personal property of the appellee, insuring the same against loss by fire for the term of three years.　Upon the expiration of this policy in 1892, a second one for the same amount, for another term of three years and covering the same property was issued by the same company.　At the time the first policy bears date and continuously on from then until the month of December, 1892, the dwelling house covered by the policy was actually occupied by the appellee and his family as a place of abode ; but in December, 1892, he and his family moved out of the house and went into and occupied another dwelling some few hundred yards away and located on the opposite side of a public highway.　He took with him nearly all his furniture, though he left in the house from which he moved a few beds and some trifling household articles, a trunk containing clothing and some provisions stored in a pantry. He and his family ceased to live in the house mentioned in the policy.　On the twenty-seventh of December, 1893, the house from which he moved and which was insured under the policy issued by the appellant was totally destroyed by fire.　Due proof of loss was filed, but the company refused to pay the loss, and based its refusal upon a ground which

will be stated later on.   Thereupon suit was brought on the policy.   When both policies were issued the property was subject to a mortgage held by Messrs. Hopkins and Harlan, to whose use the suit was entered just before the trial in the Court below, and across the face of both policies there was written in red ink the words " Loss, if any; payable to mortgagees as interest may appear."   Amongst other terms and conditions contained in the policy sued on it is expressly provided that " This entire policy, unless otherwise provided by agreement endorsed thereon or added hereto, shall be void * * if a building herein described, whether intended for occupany by owner or tenant, be or become vacant or unoccupied and so remain for ten days."   For nearly three months after the appellee removed from the insured dwelling no person occupied the house at all, and on March the sixth, 1893, permission was granted to the insured to remove the household furniture, family provisions, wearing apparel and organ, as insured under the policy, into another dwelling, " the insurance to cease at the former and apply at the latter location from " the date just named ; but there was no agreement, memorandum or assent endorsed upon or added to the policy that the dwelling house from which the appellee had previously removed should remain vacant or unoccupied at the risk of the insurer.   During a portion of the time from March, 1893, down to the fall of the same year, two and sometimes three of the workmen employed by the appellee upon his farm and in his canning business slept in the house described in the insurance policy, but they did not occupy it during the day time and did not cook or eat their meals there.   Within a week before the destruction of the house by fire a man in the service of the appellee spent one night in the house ; and occasionally whilst the hands slept there one of the sons of the appellee also slept in that house.   During the whole period of time intervening between December, 1892, when the appellee moved out of the house and December the twenty-seventh, 1893, when the house was burned, the ap-

pellee's wife went daily to the house to get provisions stored and kept there.   For a portion of this time a large number of cases of canned goods, manufactured by the appellee, were stored in the house; and at the time of the fire, in addition to the trifling articles of household furniture, the clothing and provisions that were there, some fifty odd bushels of wheat were stored in one of the first floor rooms. There is no proof as to how the fire originated.   When the evidence closed numerous prayers for instructions were presented by the defendant, but as the fourth raises the controlling question in the case and embodies the ultimate ground upon which the company resists payment of the demand made upon it, we need neither examine nor consider any of the others.   The fourth prayer is in these words: "That there is no evidence in this case, that the dwelling house that was destroyed by fire, as testified to, was occupied as a dwelling, within the proper construction of the policy of insurance offered in evidence in this case, on the 27th day of December, 1893, or that it had been so occupied at any time within ten days preceding said fire, and that no agreement permitting the property to be vacant and unoccupied was endorsed or added to the policy of insurance offered in evidence, and their verdict must be for the defendant."   This, together with several other prayers, was rejected.   The verdict and judgment were against the insurance company, and it has brought up this appeal.

The distinct inquiry is thus presented for the first time in this Court, as to what is the meaning of the terms "vacant or unoccupied," as applied to dwelling houses under fire insurance policies embodying a forfeiture clause of the kind we have said the policy sued on contains.

In *Kelly's case,* 32 Md. 421, and in *Weaver's case,* 70 Md. 539, this Court repudiated the principle of interpretation adopted in some cases, that insurance contracts are to be construed most strongly against the underwriter; and adopted the sounder view that the intention of the parties, as gathered from the whole instrument, must prevail.

What then is the obvious meaning of the terms " vacant or unoccupied " as applied to a dwelling house which, when insured, was inhabited or lived in ?    A dwelling house means a place of abode, a habitation—a house occupied or intended to be occupied as a residence.    Occupation of a dwelling house primarily implies a living in it ; and consequently a fair and reasonable interpretation of the words, " vacant and unoccupied," when used to describe a dwelling house, would seem to be that the house is without an occupant—without some person living in it.    An actual use of the house as a place of abode or habitation is what the insurer contemplates and what the policy designs to secure. When the occupant of a dwelling house moves out with his family, taking part of his furniture and nearly all his wearing apparel and makes his place of abode elsewhere, such dwelling house whilst thus deserted, must be regarded as unoccupied, that is, vacated, if the word be given its natural and ordinary signification.    It is the very situation against the hazards of which the company clearly undertook to guard itself by an express stipulation and condition inserted in the very contract upon which the suit is founded.    Obviously the word unoccupied as applied to a dwelling house in a fire insurance policy, signifies not used as a residence ; and consequently a designated tenement becomes unoccupied when it is no longer used for the accustomed and ordinary purposes of a dwelling or place of abode.    Hence, no matter what other use it may be devoted to, so long as it ceases to be a place of actual abode—a place really occupied as a residence or habitation—it is vacant or unoccupied according to the plain import of those words, and according, too, to the sense in which they are manifestly employed in the contract of insurance.    It is not a mere casual or occasional sleeping in a house that constitutes an occupancy of it.    The element of a fixed abode is an essential ingredient of every concept of occupancy when applied to a dwelling house ; and the term unoccupied is employed to express the directly opposite condition.    A po-

litical or a commercial residence does not necessarily involve an actual occupancy of a particular place. Such a residence is largely a question of intention ; whereas an occupancy of a particular place as a dwelling is not a matter of intention at all, but purely one of fact, and is absolutely inseparable from an actual, obvious abiding or living there. The insurance policy has a manifest reference to a continuous physical condition of the house as a habitation, and not to the mental purpose or mere intention. of the owner with respect to what he considers his residence. The prohibiting clause was designed to be descriptive of the thing insured in a particular that affects the hazard of the risk, and was not intended to have relation to the mere intent of the owner. If, therefore, the house be not used as a dwelling house in which people live and have their abode, it is unoccupied even though some of the owner's property may be stored there and even though occasionally some one may sleep there. If used for these last named purposes, it may be a place of storage or of temporary shelter, but it is obviously no longer occupied as a dwelling house.

This view is fully supported by numerous well considered adjudications, to some of which we will now refer. Thus in *Herman* v. *The Adriatic F. Ins. Co.*, 85 N. Y. 162, the plaintiff was living in the dwelling house at the time the policy was issued ; he left the place in November, leaving the dwelling furnished and in charge of his farmer, who occupied the farm house—a different structure—and members of whose family visited and aired the dwelling once a week. The plaintiff and his wife also visited it once a fortnight. Besides the furniture, all the summer clothing of the plaintiff and his family was left in the dwelling. In the following April the dwelling with its contents was destroyed by fire. In an action upon· the policy it was held that the dwelling house was not occupied within the meaning of the policy, which provided that if the house should "become vacant or unoccupied, and so remain for more than thirty days, without notice," &c., the policy would be void, and a

recovery was not allowed.   In *Moore* v. *Phoenix F. Ins. Co.*,
64 N. H. 140, (S. C. 3 New Eng. Rep. 57), it was held that
a dwelling house in which no one lived, but in which a
former occupant had left some trifling articles of furniture,
not of such a character as to be valuable for use elsewhere,
was "vacant and unoccupied" within the meaning of those
terms as used in the insurance policy.   In *Fesbe* v. *Council
Bluffs Ins. Co.*, 74 Iowa, 676, it was held that a policy was
avoided when the house, between the time that elapsed from
the removal of the tenant several days before the fire, until
the day of the fire, was unoccupied, except by the presence
of the owner for a short time during each day for the pur-
pose of cleaning it up.   In *Bonenfant* v. *American F. Ins.
Co.*, 76 Mich. 653, it was decided that occupancy of prem-
ises, within the meaning of a condition in a policy of insur-
ance, implies an actual use of the house as a dwelling house ;
and the mere fact that the occupant may have left some one
to look after it when he moved out with his furniture and
vacated it will not save the forfeiture.   In *Sexton* v. *Hawk-
eye Ins. Co.*, 69 Iowa, 99, it was held that insurers were not
liable for loss which occurred at a time when no one lived
in the house, though some articles belonging to a recent
tenant and some belonging to the insured, were in it at the
time of the accident, and the land on which the house was
situated and which was described in the policy was occu-
pied.   In *Haplin* v. *Aetna F. Ins. Co.*, 120 N. Y. 70, it was
decided that where an insured manufacturing establishment
is leased by the insured, and the tenant thereafter ceases
business, leaving the building closed and in charge of one
who lives in a house on the premises some distance from
the factory, and·who is intrusted with the keys and visited
the premises three or four times a week, the premises are
unoccupied.   In *Con. Ins. Co. of N. Y.* v. *Kyle*, 124 Ind.
132, (S. C. 9 L. R. A. 81 with copious notes upon which
we have drawn largely), it was held that a building is vacant
or unoccupied within the meaning of an insurance policy
which declares that the insurance shall be void in case it

becomes vacant or unoccupied where a tenant has moved out, although for the purpose of letting new tenants come in, and they intended to move in the next day after the fire occurred, and had already made some repairs on the house, but nothing had been left in it but two or three carpenter's planes. In *Keith* v. *Quincy Mut. F. Ins. Co.*, 10 Allen, 228, which case arose under a policy of insurance on a trip hammer shop, it was held that it was not sufficient to constitute occupancy that the tools remained in the shop, and that the plaintiff's son went through the shop almost every day to look around and see if things were right. So a dwelling house and barn are "unoccupied" if the former is used by the insured and his servants for the sole purpose of taking meals there while working upon an adjacent farm, and the barn is a mere storage room. *Ashworth* v. *Builders' Mut. F. Ins. Co.*, 112 Mass, 422; *Reid* .v. *Lancaster F. Ins. Co.*. 90 N. Y. 382. In *Cook* v. *Con. Ins. Co.*, 70 Mo. 610, the Court said: " When this policy was issued the plaintiff kept what witness called a " Ladies' Boarding-house," and had eight girls with her. After she left the premises there was no one living in it. She lived in Kansas City, and Southwick was by her instructed to sleep in the house, but he did not sleep in it after Wednesday night next preceding the Saturday night of the fire. His sleeping there at night was not an occupation of the house within the meaning of the policy. He did not occupy the house during the day. It is true there is more danger from incendiaries at night than in the day time, but dwelling houses unoccupied during the day are in more danger from that class than when occupied, and the abandonment of the premises by plaintiff diminished the security against the destruction of the house by fire. * * ' Occupation of a dwelling house is living in it.' " A mere supervision over it is not sufficient. It was plaintiff's business under the policy, to see that the house was occupied." See also *Farmers' F. Ins. Co.* v. *Wells*, 42 Ohio St. 519 ; *Sleeper* v. *N. H. F. Ins. Co.*, 56 N. H. 401 ; *North Am. F. Ins. Co.* v. *Zaenger*, 63

Ill. 464; *Fitzgerald* v. *Conn. F. Ins. Co.*, 64 Wis. 463; *Stupetski* v. *Trans. F. Ins. Co.*, 43 Mich. 373; *Poor* v. *Humboldt Ins. Co.*, 125 Mass. 274; *Bennett* v. *Ag. Ins. Co.*, 50 Conn. 420; *Am. Ins. Co.* v. *Padfield*, 78 Ill. 169.

These adjudged cases and many more that might be referred to, announce, we think, conclusions, entirely in accord with the natural and obvious meaning of the words contained in the restrictive condition to which we have alluded. That the dwelling house described in the policy sued on was vacant or unoccupied in the sense in which those terms are employed in the policy, at the time the fire occurred, seems to us to admit of no serious controversy notwithstanding the fact that some of the employees of the plaintiff occasionally slept there, and notwithstanding the further fact that some of the provisions of the plaintiff were kept in the house and his wife daily visited the house for the purpose of getting provisions therefrom.

But it was insisted that the fourth prayer should not have been granted because at least some of the personal property contained in the house was covered by the policy, and that the forfeiture of the policy as to the risk upon the house, did not involve or carry with it a forfeiture as to the personal property. This position is wholly untenable. When the policy became void because of the non-occupancy of the house, it became void as an entirety. It was an indivisible and entire contract, and when by its express terms it became invalid, it became invalid for all purposes and to all intents. The stipulation in regard to the forfeiture is applicable to the policy as an entirety. This is settled in Maryland beyond contention or controversy. *Bowman* v. *Franklin Fire Ins. Co.*, 40 Md. 632.

Nor can the fact that the loss was, by endorsement, made payable to the mortgagees as their interest might appear, at all affect the question before us. When a loss has happened that is covered by a valid policy, it is possible that a controversy may arise as to whether a payment has been rightly made to the insured when the policy has prescribed

that the loss shall be payable to the mortgagees as their interest may appear. In such cases it has been held that the insured has no authority by an accord and satisfaction between himself and the company to defeat the right of the mortgagees from recovering the amount due under the policy. *Hathaway* v. *Orient Ins. Co.*, 134 N. Y. 409. But here the validity of the policy is made to depend upon the insured continuing to occupy the premises, and no matter to whom the loss may be made payable, it cannot be recovered by any one if by the terms explicitly set forth in the policy, no right of action can accrue at all upon the violation of some specific condition whose observance by the insured is made necessary to fix the insurer's liability.

As we think the Circuit Court erred in refusing to grant the appellant's fourth prayer, the judgment in favor of the appellee must be reversed; and as this view of the case is decisive against the right of the appellee to recover at all, a new trial will not be awarded.

*Judgment reversed with costs above and below.*

(Decided December 6th, 1895.)