# DUMAS

*v.*

## THE NORTHWESTERN NATIONAL INSURANCE COMPANY.

INSURANCE; BREACH OF CONDITIONS IN POLICY; APPORTIONMENT.

1. Where a policy of insurance on household effects contains conditions that it shall be void if the interest of the insured be other than that of unconditional and sole ownership, and in event that the property be covered by a chattel mortgage; and it appears that the insured, at the time the policy was issued, owned one-half of the property absolutely, while the balance was either rented or covered by a chattel mortgage, or had been purchased by her on the instalment plan and was unpaid for, the vendor remaining the owner until full payment was made, the insured may be properly regarded as the sole and unconditional owner of the property covered by the chattel mortgage, but as to that portion she had purchased on the instalment plan, and as to that portion she had rented, the policy of insurance wholly fails, under the condition requiring unconditional ownership of the insured property, although the insurer might otherwise have had an insurable interest in such property.
2. The fact that in such a case, the insurer, at the time of the issuance of the policy, made no inquiry as to the true condition of the insured's ownership of the insured property, will not

preclude the insurer from taking advantage of the breach of such conditions in a suit on the policy.

3. Where, after the destruction of property so insured, the person insured makes an affidavit, prepared by a representative of the insurer, to the effect that the property insured belonged to her, and that no other person had any interest therein, such affidavit, if false, constitutes a breach of a condition in the policy of insurance that the policy shall be void in case of any fraud or false swearing by the insured touching any matter relating to the insurance, whether before or after loss, and will preclude a recovery on the policy; and that the fact that the insured failed to read such affidavit before executing it will not excuse its falsity.

4. In a suit upon such a policy, the plaintiff can not recover *pro tanto* in respect of so much of the property as actually belonged to her, the policy of insurance being a single, entire, and indivisible contract, which is invalidated by the forfeiture.

No. 751. Submitted January 4, 1898. Decided February 9, 1898.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed by the court in an action on a policy of insurance. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit upon a policy of insurance against fire. At the trial in the court below, upon the conclusion of the testimony on behalf of the plaintiff, the court, upon the motion of the defendant, peremptorily instructed the jury to render a verdict for the defendant, which was done. From the judgment thereupon entered the plaintiff has appealed.

In this condition of the record there is no controversy as to the facts. The statement of the case is to be adduced from the testimony of the plaintiff and her witnesses; and this testimony shows the following condition of things:

On February 21, 1896, the plaintiff, Nina Dumas, was the occupant of a dwelling house, No. 1430 C street, in the city of Washington, and had in it furniture stated to be of the value of about $4,000. Of this furniture she was the absolute owner of about one-half, which she stated she had

purchased in New York.   A part of the residue, amounting in value to about $950, which had been purchased from a firm of Craig & Harding, in Washington, was encumbered by a deed of trust or chattel mortgage given to secure that firm in the sum of $671, which was part of the pur-.chase money.   Another part of this residue, amounting to about $600 in value, she had purchased from a firm or company designated as the Julius Lansburgh Furniture and Carpet Company, upon what is known as the instalment plan, whereby the vendor company remained the owner of the property until full payment was made for it.   And still a third part, consisting of a piano of the value of $275, had merely been rented by the plaintiff and was not owned by her.

Being thus in possession of this furniture, on the day specified she sought the agent of the defendant company at his office, for the purpose of effecting an insurance against fire upon it in the sum of $3,000.   She did not find the agent at the time, but subsequently on the same day the agent came to her house, and agreed, in consideration of a premium of $8, to let her have a policy of insurance for $2,500.   He declined to examine the furniture, but accepted the plaintiff's estimate as to its value.   No questions were asked and no representations were made in regard to the ownership of the furniture.   Later in the day an employee of the company called at her house, received from her the premium of $8, and thereupon delivered to her the policy of insurance.

This policy contained the following conditions, which are material to the issues in the present case:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated therein ; or in case of any fraud or false swearing by the insured touching any matter relat-

ing to this insurance or the subject thereof whether before or after a loss.

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if . . . the interest of the insured be other than unconditional and sole ownership; . . . or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage; or if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of any property covered by this policy by virtue of any mortgage or deed of trust . . ."

On February 27, 1896, six days after the issue of the policy, the plaintiff went to New York, leaving her house in charge of a servant, who, after closing it at night, left it and went to her own home. On the night of March 1, or the morning of March 2, 1896, during the absence of the plaintiff in New York, fire broke out in the house under some circumstances of suspicion, and the insured furniture was destroyed or greatly injured. The plaintiff thereupon returned to Washington and employed one David J. Tavenner, who was or had been the salesman of Craig & Harding in making the sale to her of so much of the furniture as she had purchased from them, to appraise the amount of her loss. He did so; and she verified the appraisement. To the appraisement was annexed an affidavit executed by her, but prepared by the adjuster of the defendant company, in which she swore that she was the sole and absolute owner of all the articles enumerated in the schedule of the appraisement, and that they were not incumbered in any way. This affidavit she states that she executed without reading it.

On March 5, 1896, she signed and verified another paper entitled "proof of loss," presented to her by the adjuster of the company for execution. In this paper she stated that the property described therein, which was the property claimed to have been destroyed, belonged to her, and that no other person had any interest therein.

On the evening of March 6, 1896, after some negotiations with the agents of the defendant company, the plaintiff, together with Tavenner, already mentioned, who seems to have been with her as her friend, was placed under arrest by private detectives, at whose suggestion does not appear, and taken to the station house. There she was kept until the evening of the next day, and was visited in the meantime by the agents of the company, who offered to procure her release and to give her $50 if she would surrender her policy, execute a release to the company of all claims against it, and leave the city. To this she agreed. She executed the desired release, and received from the agents of the company the sum of $44.50 and a ticket to New York, with an intimation that if she returned to Washington she would be "pinched," whatever that expression means. She was put on a train to New York, but she did not go there. She returned to Washington, and on July 6, 1896, instituted the present suit.

Her declaration contains a special count and the common counts. In the former the policy of insurance is set forth and a breach of it by the defendant alleged. The defendant pleaded the general issue, the release above mentioned, and other pleas specifically to the effect that the plaintiff was not the absolute and unconditional owner of the property insured; that to portions of it she had no title, and that other portions were covered by chattel mortgage, all in violation of the conditions of the policy of insurance.

At the trial the facts hereinbefore mentioned, with other facts and details not deemed necessary here to be stated, were adduced by the plaintiff and her witnesses, and, as already stated, at the conclusion of the testimony on her behalf, the court directed a verdict for the defendant. The grounds of that direction, as set forth in the motion made for the purpose on behalf of the defendant, were four, namely :

1st. Because the plaintiff had avoided her policy of

insurance by declaring in her affidavit of March 5, 1896, that she was the absolute owner of all articles enumerated therein, and that the same were not encumbered in any way.

2d. Because part of the furniture was encumbered by a chattel mortgage.

3d. Because she had no title to any of the goods claimed to have been purchased from the Julius Lansburgh Company.

4th. Because the piano did not belong to her.

*Mr. James H. Hayden* and *Mr. Robert C. Hayden* for the appellant:

1. There was no breach on the part of the appellant of the contract of insurance. During the negotiations attendant upon the issuing of this policy of insurance, the agent of the insurance company put no question whatsoever to the appellant with regard to her ownership of or interest in the property to be insured, and in consequence of this fact and in ignorance of the conditions contained in the policy about to be issued to her, she made no statement as to the manner in which she held the property.

Such being the fact, she certainly had the right to suppose that the appellee's agent had made inquiry as to all matters which the defendant deemed material; and to avoid the policy it must be proven that she concealed some material matter wilfully and fraudulently. 1 Wood on Insurance, 517; *Insurance Co.* v. *Munroe*, 39 S. W. 434; 2 Duer on Insurance, 689, Sec. 31.

Unless an encumbrance is intentionally and fraudulently concealed, and where no inquiries are made as to the matter, the policy is valid even though it provides that if the insured be not the sole, absolute and unconditional owner the policy shall be void. *Ins. Co.* v. *Meschendorf*, 14 Ky. L. R. 757. If the insurers required a disclosure of encumbrances upon the property, their agent could very readily

have adopted, but most certainly did not adopt, sufficient means of accomplishing that object.

That the appellant, in her affidavit verifying the appraisement, stated that she was the sole and unconditional owner of the property, and that it was not encumbered in any way, did not work a forfeiture of the policy. *Knop* v. *Ins. Co.*, 101 Mich. 359. The language of the policy issued to the plaintiff brings the case within the ruling of the court in the case of *Ins. Co.* v. *Kelly*, 32 Md. 431, for, after the provision relating to encumbrances upon the property insured, is one to the effect that the policy should be void, "if with the knowledge of the insured foreclosure proceedings be commenced or notice be given of sale of any property covered by this policy, by virtue of any mortgage or trust deed." See, also, *Insurance Co.* v. *Beck & Bolte*, 43 Md. 358; *Insurance Co.* v. *Weaver*, 70 Md. 536; *Dupreau* v. *Insurance Co.*, 76 Mich. 615; *Insurance Co.* v. *Fogleman*, 35 Mich. 481; *Knop* v. *Insurance Co.*, 101 Mich. 653; *Johannes* v. *Fire Office*, 70 Wis. 196.

2. If there had been a breach, on the part of the appellant, of the contract of insurance, it would not have wholly avoided the policy, and she would be entitled in any event to recover *pro rata* on such of property as was hers absolutely. *Hobbs* v. *Ins. Co.*, I Sneed, 444; *Quarrier* v. *Ins. Co.*, 10 W. Va. 507.

3. The paper signed by the appellant, purporting to be a release of her claim against the appellee, for the said insurance, was procured for an unlawful consideration and was wholly void and of no legal effect against the appellant, from whom it was obtained while she was under duress, occasioned by threats of the defendant's agent. *Ins. Co.* v. *Hull*, 51 Ohio, 270.

4. At the trial the plaintiff introduced evidence which proved the performance and did not establish a breach o the contract of insurance on her part, and proved all other facts necessary to entitle her to recover a judgment against

the defendant in her action upon the said contract. The court below erred in instructing the jury to render a verdict for the defendant.

*Mr. A. S. Worthington* and *Mr. Charles L. Frailey* for the appellee:

1. The evidence clearly shows a breach by the appellant of the contract of insurance. The policy in suit contains the express condition that "if the subject of the insurance be personal property, and be or become incumbered by a chattel mortgage, the entire policy shall be void." The evidence showed that a large part of the property insured at and prior to the taking out of the policy was incumbered by a chattel mortgage or deed of trust. This was a direct violation of the condition in the policy. *Ins. Co.* v. *Coos County*, 151 U. S. 462. The condition in the policy just cited is a substantial, material, and important one, and its violation avoided the policy. *Geis* v. *Ins. Co.* 123 Ind. 172; *Boarman* v. *Ins. Co.* 40 Md. 620; *Ins. Co.* v. *Weaver*, 70 Md. 536. That it is not necessary for the insurer to inquire as to the title of the applicant, see *Hebner* v. *Ins. Co.*, 55 Ill. App. 275; *Guinn* v. *Ins. Co.*, 31 S. W. Rep. 566.

False swearing in regard to a part of the property insured and destroyed by fire, in violation of the condition in the policy that such false swearing would vitiate it, avoided the policy, and no recovery can be had thereon. *Moore* v. *Insurance Co.*, 28 Gratt. 508–516. The legal title to property encumbered by a deed of trust is in the trustees. *Pierce* v. *Jacobs*, 18 D. C. 498; *Williams* v. *Jackson*, 107 U. S. 478.

2. The contract of insurance, having been violated by the appellant as to a part of the property insured, was thereby rendered entirely void. *Pickel* v. *Insurance Co.*, 119 Ind. 291; *Havens* v. *Insurance Co.*, 111 Ind. 90; *Insurance Co.* v. *Stoddard*, 88 Ala. 606; *Garver* v. *Insurance Co.*, 69 Iowa 202; *Richardson* v. *Insurance Co.*, 46 Me. 394; *Kimball* v. *Fire Insurance Co.*, 8 Gray, 33; *Lee* v. *Insurance Co.*, 3 Gray, 583;

*McGowan* v. *Insurance Co.*, 54 Vt. 211; *Stevens* v. *Insurance Co.*, 81 Wis. 335; *Fire Asso.* v. *Williamson*, 26 Pa. St. 196; *Moore* v. *Insurance Co.*, 28 Gratt. 508; *Barnes* v. *Insurance Co.*, 51 Me. 110; *Plath* v. *Insurance Asso.*, 23 Minn. 479; *Day* v. *Insurance Co.*, 51 Me. 91; *Schumitz* v. *Insurance Co.*, 48 Wis. 26; *Gould* v. *Insurance Co.*, 47 Me. 403; *Lovejoy* v. *Insurance Co.*, 45 Me. 472; *Friesmuth* v. *Insurance Co.*, 10 Cush. 587; *Insurance Co.* v. *Hamilton*, 82 Md. 88.

3. The release was not executed by the appellant under duress or by reason of threats of the appellee or its agents. To constitute duress by threats of illegal arrest, the act which the party seeks to avoid must have been done by him through fear of such threatened arrest. *Flanigan* v. *Minneapolis*, 36 Minn. 406. A payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon him by the party to whom the money is paid. *Radich* v. *Hutchins*, 95 U. S. 210. In the case at bar there was no actual or existing duress imposed upon the appellant by the appellee or its agents, for the only duress claimed, even by the appellant, was the alleged threat of Theis, which did not exist.

Mr. Justice MORRIS delivered the opinion of the Court:

It will be noticed that among the reasons assigned for the motion to direct a verdict in favor of the defendant, the enforced release executed by the plaintiff is not mentioned. And certainly it was very proper to omit this proceeding from the further consideration of the court. We do not need to give it any consideration here; although it is insisted on in the brief of counsel for the appellee. If the case turned upon that release, our conclusion might be very different from that which we have reached.

There are six assignments of error by the appellant. Four of these raise the same substantial question, that there was no breach of the conditions of the policy of insurance

by the plaintiff, either in executing the affidavit before mentioned, or in the fact that part of the property was covered by a chattel mortgage, or that the title to part of the property was not in her. The fifth has reference to the release executed by the plaintiff, while under duress, as is claimed. And the sixth is based upon the theory that the plaintiff had made a case wherein she was entitled in any event to go to the jury.

In view of what we have said, the fifth assignment need not be further considered here; and the sixth will be disposed of by what we have to say of the others. In connection with this last assignment, however, the point is made, that in any event the plaintiff should have been allowed to recover *pro tanto* for the property actually owned by her, even if as to the remainder of the property insured the objections of the defendant should be regarded as well taken. Of this in its order.

1. The burden of the argument on behalf of the appellant is that there was no fraudulent concealment of anything by her; and that, if there was any omission of proper information, it was the duty of the defendant company and its agents to inform themselves of the true condition of things by proper inquiry before the policy of insurance was issued. And the claim is, that, in the absence of fraudulent concealment by the plaintiff, and in the absence of proper inquiry by the agents of the defendant company, the plaintiff is not chargeable with any breach of the conditions of the policy of insurance.

That there was apparent breach of the conditions of the policy is beyond all question. One of those conditions was that the policy should be void if the interest of the insured in the property should be other than that of unconditional and sole ownership. To one-fifth of the property, or thereabouts—the piano valued at $275, and the property purchased from the Lansburgh Company, about $600—she had no title whatever. Even if it be conceded that she had an

insurable interest, both in the piano, which she had only rented, and in the other property, of which the title had been expressly retained by the vendor, it is very clear that the interest was not that of unconditional and sole ownership.

Another of the conditions was that the policy should be void in the event that the property insured should be covered by a chattel mortgage. Nearly one-quarter of the property—that purchased from Craig and Harding, and valued at $950—was incumbered by a chattel mortgage to secure the greater part of the purchase money yet due upon the property to that firm.

Yet another condition was that the policy should be void in case of false swearing by the insured touching any matter relating to the insurance or the subject thereof, whether before or after a loss. After the loss in the case, the plaintiff, in an affidavit presented to the company and constituting part of her proof of loss, swore that she was the sole and absolute owner of all the articles enumerated in her schedule of her loss, and which comprised both the piano and the furniture contracted for with the Lansburgh Company; and in view of what has already been said, that statement was undoubtedly untrue, and therefore necessarily a violation of the condition of the policy.

But it is argued that there was no fraud in all this on the part of the plaintiff, and that, therefore, she ought not to be precluded from recovering. And cases are cited in which it is claimed that recovery has been allowed under somewhat similar circumstances.

We do not so understand the law. It is unnecessary, and it would be a hopeless task to enter upon the dreary wilderness of judicial decision upon the subject of insurance, with the view of deducing a rule from it for our government in the present instance. Courts have sometimes been too astute in their search for reasons to maintain the liability of insurance companies in the face of conditions limiting such

liability.    And yet a contract of insurance in this regard is
no different from other contracts; and the function of
courts is to construe them, not to make them.    In the
absence of statutory provisions to the contrary, insurance
companies have the same rights as individuals to limit their
liability, and to impose whatever conditions they please
upon their obligations not inconsistent with public policy;
and the courts have no right to add anything to their con-
tracts, or to take anything from them.    If those contracts
contain harsh and onerous conditions, which perhaps a court
of equity might not enforce, if called on so to do, yet there
is no compulsion, either legal or moral, on parties to deal
with them upon the basis of such conditions.    And cer-
tainly it would be a novel contention for parties to seek to
enforce liability under such contracts in a court of common
law, and at the same time to repudiat the express condi-
tions upon which such liability is made to depend.

We must take it for granted, therefore, that our duty in
the premises is to construe the contract of insurance before
us according to its true legal intent and meaning, and not
in any manner to vary or modify the instrument itself by
disregard of any of its provisions.    It is true, however, that
this construction must be with reference to the well-estab-
lished rule that, if a policy of insurance is so drawn as to
require interpretation and to be fairly susceptible of two
different constructions, the one will be adopted that is most
favorable to the insured.    *Imp. Fire Ins. Co.* v. *Coos County,*
151 U. S. 452.

In the sense of absolute ownership, clear and unincum-
bered, as commonly understood, the plaintiff had title only
to about one-half of the property which she sought to insure.
With reference, however, to the portion of the property
purchased from Craig and Harding, and which was covered
by a chattel mortgage, she may, in view of the authorities
on the point, be also regarded as the sole and unconditional
owner.    *Insurance Co.* v. *Kelly,* 32 Md. 421; *Howard Fire Ins.*

*Co.* v. *Chase*, 5 Wall. 509. But it is.not apparent how, in any sense of the words, she can be regarded as the sole and unconditional owner of the residue of the property. The ownership of that residue was purely and simply conditional; and it would be difficult to conceive an ownership more distinctly of the character against which the defendant company sought to guard its liability. If, therefore, we are to give any force whatever to the condition in the policy of insurance that the person insured must be the sole and unconditional owner, we can not hold that the condition was observed in regard to a considerable part of the property sought to be protected by this instrument. It may well be that the plaintiff had an insurable interest in all of it, possibly even in the piano, which she had only rented, and that the defendant company might have insured that interest, if only that had been presented to them for insurance. But certainly it was not the interest that was actually presented for insurance; it was not sole and unconditional ownership. And it does not follow that, even if the defendant would have insured, it would have done so on the same terms and conditions. On the contrary, in such cases, the terms and conditions are usually different from the case of either absolute or unconditional ownership.

We must conclude that, at least as to part of the property, about one-fifth of it in value, the policy of insurance wholly failed, for the reason that the condition of insurance, requiring unconditional ownership in the plaintiff was never performed by her.

2. It may be that it was in consequence of such decisions of the courts as those to which we have referred, wherein it was held that there was sole and unconditional ownership, in the legal sense of the policy of insurance, notwithstanding the existence of an outstanding mortgage, that insurance companies sought further to limit their liability by imposing conditions against such mortgages. But whatever may have been the suggestion for these conditions, it is very certain

that they add limitations to the policy beyond that of sole
and unconditional ownership, which we can not disregard.
It was the right of the company in this case to refuse to
insure mortgaged property, and to provide that its policy of
insurance, however otherwise conditioned, should not cover
personal property encumbered by a chattel mortgage.  As
nearly one-quarter of the property in question here was
covered by a chattel mortgage, we find it impossible to under-
stand how the policy can reasonably be construed so as to
protect it.

3. But it is said that all this is of no consequence, inas-
much as the defendant company made no inquiry as to the
true condition of things, and there was no fraudulent con-
cealment on the part of the plaintiff.  And there is excel-
lent authority for the doctrine, that "as to the ordinary
risks connected with the property insured, if no representa-
tions whatever are asked or given, the insurer must be
supposed to assume them; and if he acts without inquiry
anywhere concerning them, he seems quite as negligent as
the insured, who is silent when not requested to speak."
*Clark* v. *Manufacturers' Ins. Co.*, 8 How. 235.  The agents of
insurance companies are usually experienced men, well
informed as to the information which they should have in
anticipation of the risk which they assume; and the rule is
not unreasonable which would require them to make all
due inquiry for the procurement of such information.  Nor
is it unreasonable that the insured should be held harmless
from the mere failure to give information, when he is not
interrogated, and when perhaps he is not aware of the
importance or immateriality of the matter to which the
information should extend.

But this is not a case of representation or misrepresenta-
tion, of failure to give information or failure to elicit it by
proper inquiry.  The parties have deliberately put it into
their contract, and have made it an essential condition of
that contract that the contract itself should not be binding,

if there was any mortgage on the property or the title was not that of unconditional ownership. There was no inhibition by law against the insertion of such a condition in the contract; and it may well be that its insertion was a matter of precaution, to guard as well against the negligence or failure of agents to elicit proper information, as against the negligence or failure, not fraudulent, of persons seeking insurance to give such information. The condition is not illegal and does not contravene any rule of public policy; and even if its practical effect should be held to be to throw upon the insured party the burden of giving voluntarily the information which otherwise the insurer would have been required to elicit by proper inquiry, we know of no rule of law that would preclude parties from contracting to that effect, if they so desire.

In the case of *Clark* v. *Manufacturers' Ins. Co.*, 8 How., 235, to which we have referred for the rule imposing the burden of inquiry upon the insurer rather than that of voluntary information upon the insured, the matters there referred to as proper knowledge for the insurer were the circumstances of the use of property, to which the minds of insurers would naturally be directed, and those of parties insured might not be so called. But it seems to us that a different condition of things arises, when a person solicits insurance on property not his own, and which he knows not to be his own; and when to the proposed insurer the very solicitation of insurance is the equivalent of a representation that the property, for which the policy is sought, is the unconditional and absolute property of the person seeking the insurance. Assuredly it would not be held that, if the person had no title at all of any kind, and the policy, therefore, was simply a wagering policy, yet he should still be entitled to recover, if the company or its agents had made no inquiry in regard to his ownership. Neither ownership nor the character of ownership is usually a subject of inquiry in such cases.

In support of the contention of the plaintiff, two cases from Kentucky are cited, *Lancaster Ins. Co.* v. *Munroe,* 39 S. W. Rep. 434 (Court of Appeals of Kentucky, March, 1897), and *Insurance Co.* v. *Meschendorf,* 14 Ky. L. R. 757. But the decisions in those cases are expressly based upon the provisions of the statute law of the State of Kentucky, which are to the effect that "no misrepresentation, unless material or fraudulent, shall prevent a recovery on a policy of insurance." Acts of Kentucky of 1874. Were they the result of the application of general principles of law, it is not apparent how they could be supported in reason or with any regard to the inalienable rights of parties to contract with each other as they may deem proper, so long as their contracts are not prohibited by law. We cannot read the word "*fraudulent*" into the contract before us, when neither the letter nor the spirit requires it for the purpose of reasonable interpretation. The contract deals with facts and conditions, not with the intention of the parties with reference to those conditions.

4. What we have said in regard to the matter of the title to the property and the conditions of the policy in reference thereto, will serve in great measure to dispose of the matter of the affidavit made by the plaintiff for the purpose of procuring payment to her of the amount of the policy of insurance. That this affidavit had been prepared by the agent of the defendant company, and that the plaintiff did not read it before she executed it, are circumstances that can not for a moment entitle themselves to consideration. The affidavit was short, plain and simple. It was not difficult to be understood; and the failure of the plaintiff to read it before execution only aggravates the falsity of its statements. There is no pretence that she was in any manner prevented from reading it, or that there was any fraud on the part of the agents of the defendant in its procurement. It was precisely the thing against which the defendant company sought to guard itself when it provided

that the policy of insurance should be void in case of any false swearing about the matter, either before or after the loss. Unless, therefore, we are to hold that this condition in the contract in regard to false swearing was meaningless or void—and we are not aware of any rule of law upon which we can so hold—we can not see how its effect in vitiating the policy of insurance can be avoided.

The case of *Knop* v. *National Fire Ins. Co.*, 101 Mich. 359, is cited, in which there was a suit like the present upon a policy of insurance. There, also, there was a provision in the policy that it should be void if the interest of the insured were other than unconditional and sole ownership. Whether there was any provision in regard to false swearing, as in the policy before us, does not appear from the report of the case, and we are not otherwise advised. But after the loss, the insured party made an affidavit to the effect that he was the sole and unconditional owner. The court, in its opinion, said: "It has been repeatedly held that such a condition will not invalidate the policy in such a case. . . . We do not think that the statement in the affidavit, made after the loss, that he was the sole and unconditional owner, would prevent a recovery." The reason given for this latter conclusion is that the false affidavit could not have prejudiced the defendant company.

Plainly that case has no application to this now before us. In that case there was, as here, a chattel mortgage upon the insured property, which was not disclosed to the insurer at or before the issue of the policy. But the court held, in accordance with what seems to be the preponderance of authority on that point, that, notwithstanding such mortgage, the plaintiff was in law, and according to the true legal intent and meaning of the policy of insurance, the sole and unconditional owner; and therefore the condition of the policy had not been broken. But there was no condition there, as here, against the existence of mort-

gages upon the property; and there was no such absence of ownership, as here, with reference to part of the property.

When in that case the court held that the plaintiff was the sole and unconditional owner of the insured property, notwithstanding a mortgage existing against it, it would have been entirely logical, in reference to the affidavit, to hold that this paper was not false.  For if the plaintiff was in truth the sole and unconditional owner of the property, it was no falsehood for him to say so, either in an affidavit or otherwise.  In the opinion it would seem to be conceded that the affidavit was false; but the falsehood was sought to be excused on the ground that it did no injury to the defendant.  This may also have been a correct statement of the law as applicable to that case.  But it does not appear in that case, as it appears here, that false swearing on the part of the insured, whether prior to a loss or subsequent thereto, operated to avoid the contract, by being made an integral and essential condition of the contract.  We can not say that the insertion of such a condition in the contract was either illegal or improper.  Harsh, perhaps, it may have been; but it was competent for the parties to make it, and they made it.  We may conjecture even that it was inserted in the policy of insurance, in view of the decision in the case of *Knop* v. *National Fire Ins. Co.*, or of some similar decision elsewhere.  Whatever may have been the motive, it is not illegal; it is part of the contract; and it can not be disregarded by us.  As part of the contract, it makes a very different case from that of a false affidavit made in the ordinary course of the proof of loss, and which has not entered into the contract itself as a condition of the validity of the policy.

5. From what we have said, it necessarily follows, in our opinion, that as to about one-half of the property supposed to have been covered by the policy of insurance, that policy was or became void by its own express limitations, the condition of the plaintiff's interest in the property, and the

affidavit executed by the plaintiff. But it is argued on behalf of the appellant that this should not preclude a recovery, *pro tanto,* in respect of so much of the property as actually belonged to the plaintiff and to which she had full right and title. Again, the answer to this is found in the contract itself. It is one single and entire contract; and the conditions which operate to invalidate it expressly provide that it shall be avoided in its entirety. Even in the absence of such express provision this would be the result in the present case in any event by operation of law. The contract is plainly indivisible—certainly not divisible upon any such lines as those indicated in this contention. The defendant insured a certain amount of furniture as a whole upon certain terms and conditions. We cannot assume that it would have insured a part only on the same terms and conditions, inasmuch as the risk might be wholly different. So to assume would be to assume to make a contract for the parties; and such assumption we have repudiated as being beyond the province of the courts, and indeed beyond the province of any other authority than the parties themselves.

The patient ingenuity and evidently conscientious and laborious research of counsel for the appellant have failed to find more than two adjudicated cases in apparent support of their contention in this regard; and we are unable to see that those cases have that effect. In one of them from the Supreme Court of the State of Tennessee, the case of *Hobbs and Henly* v. *Memphis Ins. Co.,* 1 Sneed, 444, action was brought on a policy of fire insurance, covering groceries owned by a partnership. One of the conditions of the policy was that it should be void if assigned in whole or in part. One of the partners, Hobbs, sold his interest in the property and assigned his interest in the policy to his copartner. The property was destroyed by fire, and the insurance company claimed a total forfeiture of the policy on the ground that it had been invalidated by the assign-

ment. It was held by the court, however, that Henly, the copartner, was entitled to recover for his *pro rata*. But if there was error in this decision—and we are disposed to think there was, and that the decision cannot be sustained either on reason or on authority—it was that the remaining partner, Henly, was not allowed to recover for the whole property. For, in our opinion, the assignment by one partner to another was not such an assignment as was contemplated by the policy of insurance.

The other case cited is from West Virginia. It is the case of *Quarrier* v. *Insurance Co.*, 10 W. Va. 507, in which suit was brought upon a policy of insurance effected on four buildings and the fixtures therein. The policy provided that it should become void upon a sale or transfer of the property; and the contract of insurance was one entire contract. One of the buildings was sold; and subsequently all four of them were damaged by fire. A recovery was allowed for the three buildings retained by the person insured. But we fail to see wherein that is pertinent to the question before us. The claim of forfeiture in that case was wholly unwarranted. By the express terms of the policy itself there could have been no forfeiture except by the alienation of all the property. There was no provision in reference to a partial alienation. At the same time as the recovery by the insured could properly have been only in proportion to his loss and the total amount of the insurance, the decision was only just to permit such proportionate recovery. This was only the application of the principle which makes the amount of the policy the limit of recovery, and authorizes recovery only to the actual extent of the damage within that limit. In the case before us, if there were no question of the plaintiff's ownership of the property insured, and subsequently to the issue of the policy of insurance she had sold or disposed of some of the property, there might be room for the application of the doctrine of the case of *Quarrier* v. *Insurance Co*; but as the

case actually stands it presents a very different aspect, and the rule of that case can not apply.

The proposition that a policy of insurance, such as that shown in the present case, is an entire and indivisible contract, the consideration being entire, is amply supported by authority. *Boarman* v. *Franklin Fire Ins. Co.*, 40 Md. 620; *Agricultural Ins. Co.* v. *Hamilton*, 82 Md. 88; *Gottman* v. *Penn. Ins. Co.*, 56 Pa. 210; *Lee* v. *Howard Ins. Co.*, 3 Gray, 583; *Geiss* v. *Insurance Co.*, 123 Ind. 172; *Garver* v. *Insurance Co.*, 69 Iowa, 202; *Stevens* v. *Insurance Co.*, 81 Wis. 335; *McGowan* v. *Insurance Co.*, 54 Vt. 211. The forfeiture necessarily operates to invalidate the whole policy.

From what we have said it follows that the plaintiff having shown by her own testimony that the policy of insurance upon which she sued had become void by its own express terms, had no case upon which to go to the jury; and the trial court was fully justified in peremptorily directing a verdict in favor of the defendant.

The judgment appealed from must, therefore, be *affirmed, with costs. And it is so ordered.*