FITZGERALD, Administratrix, etc., Respondent, vs. THE CONNECTICUT FIRE INSURANCE COMPANY, Appellant.

*October 19 — December 1, 1885.*

*Insurance against fire: "Vacant or unoccupied."*

A dwelling-house, granary, and horse-barn were insured by a policy which stated that they were occupied by a tenant, and provided that if they became vacant or unoccupied and remained so without consent, etc., the policy should be void. The tenant left and the premises were for some time vacant. Afterwards the assured told the agent of the company that he was not going to leave a tenant in the house any more, and explained that he couldn't work the farm and keep the tenant there; that he wanted his men to go there and do the farm work; that his men had to go from place to place, and that while they were there they would live in the house. Thereupon the agent indorsed upon the policy: "It is understood that the buildings insured hereunder are now occupied for dwelling and farm purposes." The assured lived upon another farm about two miles distant, but carried on the farm upon which the insured buildings were situated. While his men were at work upon the latter farm they cooked, ate, and slept in the dwelling-house, in which there was some furniture; but when no work was being done on that farm no one stayed in the house, though frequently some one would go through the house to see if things were right. *Held,* that the dwelling-house was not "occupied" within the meaning of the indorsement upon the policy. [TAYLOR and ORTON, JJ., dissent, being of the opinion that the indorsement, construed in the light of the explanation made to the agent, did not contemplate a continuous occupancy.]

APPEAL from the Circuit Court for *Winnebago* County.

Action upon a policy of insurance against fire covering a dwelling-house and other farm buildings. The dwelling-house was destroyed by fire November 14, 1883. The evidence given upon the trial and the special findings of the jury are sufficiently stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

*J. W. Lusk*, for the appellant.

For the respondent the cause was submitted on the brief of *James Freeman* and *Gabe Bouck*.

COLE, C. J. This is an action upon a policy of insurance. The policy was issued November 22, 1880, on a dwelling-house, frame granary, and horse-barn — three separate buildings — for the term of three years. The policy stated that the premises were occupied by a tenant. The tenant remained on the premises for a year or more and then left. It is practically conceded that the buildings were vacant and unoccupied for some time thereafter. The policy contained the condition that if the premises became vacant or unoccupied, and so remained for more than ten days, without notice to and consent of the company in writing, it should be void. On the 20th of June, 1883, the assured went to the agent of the company and said this, to use his own words: "I came in to Mr. Lawson, and told him that I was not going to leave a tenant in the house any more; that I couldn't work the farm and keep the tenant there; that I had to have my own men there while I was putting in the crops and taking it out and cutting the hay. I kept my cattle there all the time, and there was no use of my keeping it insured unless I could keep it insured in that way. He said he would sooner have it that way than have a tenant in, so he indorsed on the policy in that way. He put that indorsement on there, and said that would make it all right. I explained to him at that time that I wanted

my men to go there and put in the crops and take it out, and also cut the hay and do the plowing, the same as we had to do on any farm. I told him my men had to go from one place to the other, and while we were there we wanted to live in that house, and that was the way it was going to be occupied,— that way and no other. That is the precise way I stated." The agent then indorsed on the policy this writing: "June 20, 1883. It is understood that the buildings insured hereunder are now occupied for dwelling and farm purposes. H. L. LAWSON & BRO., Agts." The assured lived about two miles distant on another farm, and carried on the farm upon which the insured buildings were situated during the summer and fall of 1883, his men going back and forth, sometimes sleeping and eating in the insured dwelling-house, and there was some little household furniture therein. As to the kind or extent of occupancy of the dwelling, the assured further said: "All the occupancy there was, was while these men were there,— while they were there to work. . . . When there was not anything being done on that farm there would be no men staying in the house at all. If they had no work to do there, there was nobody staying there at all. When there was work to do the workmen cooked and slept there, the same as the house where I live." This was the character of the occupancy, as appears from the plaintiff's own case. When there was work to be done upon that farm the men cooked, ate, and slept in the house. Often, when men were not at work there, some member of the family would go to the farm or to the house, go through it, and see if things were right. But it is not claimed, nor could it be on the testimony, that some person usually lived at the house, or stayed upon the premises and slept there. For periods of more than ten days there was no one in the house nights, and it was absolutely vacant and unoccupied as a dwelling-house.

A number of questions were submitted to the jury, to

which answers were given. The fourth question was this: "Was the dwelling-house insured unoccupied and vacant at any time after the indorsement of June 20, 1883, and did it still remain vacant and unoccupied for above ten days at any one time?" To this question the jury answered in the negative, in the teeth of an instruction given that the term "occupied," within the meaning of the policy, means that the house must be habitually occupied; that is, somebody must have lived there and slept there habitually,— not every night, but usually and ordinarily. The ninth question was this: "After the 20th of June, 1883, was the said building occupied for dwelling and farm purposes?" This the jury answered in the affirmative. After a careful examination of the testimony it seems to me that both these findings are wholly unsupported by the proofs in the case. Certainly, the word "occupancy," as used in the policy, is not to be understood in any technical sense. It is not that occupancy or possession which follows the legal title, and which the assured might be said to have by reason of owning and cultivating the farm. It means something more than this. As applied to the dwelling, it is to be understood in the popular sense as defined in the following cases: "For a dwelling-house to be in a state of occupation there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage." Folger, C. J., *Herrman v. Adriatic F. Ins. Co.* 85 N. Y. 169. "A dwelling-house and barn are unoccupied, within the meaning of an insurance policy which provides that buildings unoccupied shall not be covered by the policy, where the house is only used by the insured and his servants for the purpose of taking their meals there when engaged in carrying on a contiguous farm, and the barn is only used for the purpose of storing hay and farming tools." *Ashworth v. Builders' M. F. Ins. Co.* 112 Mass. 422. To the

same effect are *Keith v. Quincy M. F. Ins. Co.* 10 Allen, 228; *American Ins. Co. v. Padfield,* 78 Ill. 167. It is impossible to affirm that there was any actual use or occupation of the dwelling-house after the 20th of June, 1883, in this manner.

The fifth and sixth questions are as follows: "Did the plaintiff's intestate state to the agent of the defendant at the time the indorsement of June 20, 1883, was made that it (the dwelling-house in question) was going to be used in the manner in which it was afterwards used?" (6) "Did the insurance agent assent to the building being used by plaintiff's intestate as the testimony shows it was used?" Both of these questions were answered in the affirmative. We have already given the testimony of the assured of "the precise way" he explained to the agent how he proposed to use and occupy the building and farm; and we think no one would suppose from what was then said that the dwelling-house was only to be occupied when the men were at work on the farm, and at all other times it was to be vacant and unoccupied, with no one living in it by day nor sleeping in it by night. On the contrary, we think the agent might well suppose that some one (not a tenant, but some member of the family of the assured) was going to live in the house, and would usually be in it nights to look after it.

In answer to the tenth question the jury found that the building was used in accordance with the arrangement made between the assured and the agent on the 20th of June. We have shown from the testimony of the assured himself just what that understanding or arrangement was. No comment is necessary to point out the entire absence of proof to support the finding of a different arrangement.

The eleventh question was: "Does the indorsement of June 20, 1883, state the agreement and understanding between the agent and Mr. Fitzgerald as to how the insured building was to be thereafter used and occupied?" **The**

answer was as follows: "Yes; we mean by 'yes' on question eleven that the premises were occupied as understood by the assured and the agent, Lawson, at the time of the indorsement on the 20th of June, 1883." This answer is clearly an evasive one. The question admitted of a direct and unqualified answer, and the defendant was entitled to it. *Davis v. Farmington*, 42 Wis. 426. The learned circuit judge had stated, on submitting this question, that it had been claimed on the part of the plaintiff that the writing on the policy of June 20th did not express the whole agreement that was at the time made, but that there was some further understanding between the parties not expressed in the writing itself; and the circuit judge directed the jury that they were not to answer this question in the negative, unless satisfied beyond a reasonable doubt, by testimony that was clear and convincing, that the writing did not contain the whole agreement which was made at the time. Presumably the writing contained the agreement or understanding of the parties. True, it is not very explicit, and seems to refer merely to the state of things existing when it was made. It reads: "It is understood that the buildings insured hereunder *are now occupied for dwelling* and farm purposes." The writing seems to relate to present not future occupancy. But, if construed in the light of the testimony of the assured, we should infer from it that he had some doubt whether the policy did not require an occupancy by a tenant; perhaps he feared that it had already become forfeited by reason of non-occupancy. It does not appear that the assured communicated to the agent the fact that the buildings had been vacant and unoccupied for a year or more. The agent says he did not communicate to him that fact. But we are now considering the findings with reference to the plaintiff's case, seeking to ascertain what evidence there is to sustain them. If the agent made a mistake in reducing the agreement to writing, this doubt-

less might be shown by parol testimony. But we find no satisfactory evidence that any mistake was made. For, as we have said, the obvious legitimate inference from the testimony of the assured is that the buildings were not to be occupied by a tenant longer, but that his men would occupy them while at work on the farm for farm purposes. But that there was to be an occupancy by some one seems to be fairly implied, as well from the testimony of the assured as the writing itself so far as it bears upon the question.

The motion made by the defendant to set aside the findings of the jury, because contrary to or unsupported by the testimony, should have been granted.

TAYLOR, J.  The only material question in the determination of this appeal arises upon the construction of the indorsement made upon the policy of insurance by the agent of the company, as shown upon the trial. The property insured is a dwelling-house, granary, and horse-barn. The policy is for three years, and bears date November 22, 1880. When the policy was taken it was stipulated therein that the premises were occupied by a tenant, and there was a condition in the policy that if the premises became vacant or unoccupied, and so remained for more than ten days without notice to and consent of the company obtained in writing, it should be void. The proofs on the trial showed that previous to the 20th day of June, 1883, the tenant had left the premises, and they had been vacant and unoccupied for more than ten days without notice to or assent of the company. On the day last mentioned the insured came to the agent of the company with his policy, and, as he testifies, made the statement quoted in the opinion of the court filed in this case, and thereupon the agent made the following indorsement on the policy: "June 20, 1883. It is understood that the buildings insured hereunder are now occupied for dwelling and farm purposes. H. L. LAWSON & BRO., Agts."

As the jury were to judge as to the truth of the statement alleged to have been made by the assured to the agent of the company at the time this indorsement was made, and they having found that such statement was in fact made as testified to by the assured, it seems to me the indorsement must be construed in the light of such statement, and is intended to so change the original policy as to permit the assured thereafter to occupy the property in the way he ^learly indicated it would be thereafter occupied.

If we consider this indorsement made to carry out the wishes and purposes of the insured as to the manner of occupying the premises insured thereafter, it seems to us quite clear that it should not be so construed as to require an actual and continued occupation of the dwelling-house thereafter, either by the insured or by some one in his employ. The statement made clearly negatived the idea that the insured would occupy the insured dwelling in person, and the proofs show more clearly that there could not have been any such intention, or that the agent could have so understood the assured; as it appears he had another and much larger farm, and a much more convenient and comfortable house, where he was then living with his family. Is it, then, fairly to be inferred that the insured was to keep the same constantly occupied by an employee or some member of his family? If there was any understanding that it should be constantly occupied thereafter, it must have been that an employee, or some member of his family, should so occupy it, because the agent was informed that it would not be thereafter occupied by a tenant of the insured. To me it is sufficiently plain that the fair inference to be drawn from the statement made by the insured was that thereafter the buildings would not be constantly occupied by any one, but they would be so occupied only when he and his men were there on the farm at work putting in the crops or harvesting the same. He says: "I explained to him that I wanted my men to go there and put in the crops

and take it out, and also cut the hay and do the plowing, the same as we had to do on any farm. I told him [the agent] my men had to go *from one place to another*, and *while we were there we wanted to live in that house*, and that was the way it was going to be occupied; that way, and no other." It cannot, I think, be fairly inferred from this statement that the insured intended to or did convey to the agent the idea that some one would be constantly in the actual occupation of the insured buildings within the ordinary meaning of those words; and that the words of the indorsement may well be construed in the light of this statement to mean just such an occupancy as the assured stated they were to have, and that such occupancy would not be a continuous one, but would conform to the necessities and convenience of the insured in carrying on and working the farm on which they were situated.

While the findings of the jury are undoubtedly subject to the criticism made in the opinion of the majority of the court, still, if the indorsement be construed as I think it must be in view of the evidence, the inconsistencies of the findings are not fatal to the plaintiff's right of recovery, and ought not to reverse the judgment; or if the judgment should be reversed on account of the inconsistent and unsupported findings of fact by the jury, then it should be reversed for that reason alone, and not because, upon the whole evidence in the case, the plaintiff is not entitled to recover.

ORTON, J. I most respectfully concur in this dissenting opinion as expressing my views of the case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

See note to this case in 25 N. W. Rep. 789.— REP.