[Civ. No. 1490.  Third Appellate District.—September 30, 1916.]

DAVID E. COVEY, Respondent, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH (a Corporation), Appellant.

FIRE INSURANCE LAW—OCCUPANCY OF BUILDING—EVIDENCE.—A private dwelling is not vacant or unoccupied within the meaning of a clause in a policy of insurance providing that the company will not be liable for loss or damage from fire occurring while the building is vacant or unoccupied beyond the period of ten days, where, at the time of the fire, the occupant of the premises for the period of one year next preceding the fire was in the act of removing from the premises, but had not completed such removal nor surrendered possession to the landlord, although he had actually removed himself and his family from the premises.

ID.—DISAGREEMENT WITH AMOUNT OF LOSS CLAIMED—INSUFFICIENCY OF NOTICE.—Where a policy of fire insurance provides that the company shall be deemed to have assented to the amount of the loss claimed by the insured in his preliminary proof of loss, unless within twenty days after the receipt thereof the company shall notify the insured in writing of its disagreement with the amount claimed, a notice of disagreement given by letter mailed on the twentieth day after the receipt of such proof of loss to the insured residing in a different place, and received two days after the mailing, is not given in time.

Id.—Demand for Appraisement—Insufficiency of Notice.—Where a policy of fire insurance provides that if for any reason not attributable to the insured or to the appraiser appointed by him, an appraisement is not had and completed within ninety days after the preliminary proof of loss is received by the company, the insured is not to be prejudiced by the failure to make an appraisement, and may prove the amount of his loss in an action brought without such appraisement, a demand for an appraisement given by letter mailed before the expiration of said ninety-day period but not received until after its expiration is not within time.

APPEAL from a judgment of the Superior Court of Shasta County.  James G. Estep, Judge.

The facts are stated in the opinion of the court.

Sterling Carr, for Appellant.

Braynard & Kimball, for Respondent.

CHIPMAN, P. J.—The cause was tried by the court without a jury and plaintiff had judgment for eight hundred dollars, as damages for loss by fire against which defendant had issued its policy of insurance.  Defendant appeals from the judgment under the alternative method.

The following were stipulated as facts in the case: The policy took effect July 13, 1913, and was for one year; the insured building was destroyed by fire October 1, 1913, about the hour of 2 A. M.; notice of the fire was received by defendant October 21, 1913, and on November 19, 1913, proof of loss was filed with defendant; by letter dated December 8, 1913, defendant wrote plaintiff notifying him of its "total disagreement of the amount claimed" by plaintiff, and that defendant "admits a loss of $290.91 on the property described in above-mentioned policy"; this letter was mailed at San Francisco on December 9, 1913, and was received by plaintiff on December 12, 1913; on December 31, 1913, plaintiff brought an action on said policy for eight hundred dollars, in all respects the same as the present action; the first action was dismissed April 4, 1914, and the present action was commenced on April 8, 1914; on February 16, 1914, defendant mailed to plaintiff "a demand for arbitration" by letter dated at San Francisco on that day, and directed to plaintiff at "Millville,

Shasta County, California," notifying him that defendant "failed to agree as to the amount of loss caused by fire of October 1st, 1913, to the building described in . . . Policy No. 5116 . . . as admitted in our notice to you dated December 8, 1913"; and stated that "this company demands an appraisement of the loss . . . and names L. N. Bursen a competent and disinterested appraiser," and calls upon plaintiff to appoint an appraiser and so notify defendant; "this notice was received at Millville by Mr. Covey February 20, 1914. No appraiser was ever appointed by Mr. Covey and no notice was ever taken of this demand."

The policy in question was what is known as the standard California form. Certain of its provisions are more or less applicable to the case in hand and will be given in the order found in the policy, omitting intermediate provisions, as follows:

"$800. · On the two story frame dwelling and its adjoining and connecting additions . . . and all permanent fixtures therein and attached thereto, property of assured, while occupied only as a private dwelling, situate (as per diagram) on the north side of Main street in Whitmore, Shasta County, California. . . .

"This policy is made and accepted subject to the foregoing stipulations and conditions and those hereinafter stated, which are hereby specifically referred to, and made part of this policy, together with such provisions, agreements or conditions as may be endorsed thereon or added thereto, etc. . . .

"Unless otherwise provided by agreement endorsed hereon or added hereto, this company shall not be liable for loss or damage occurring . . . (f) while a building herein described whether intended for occupation by owner or tenant, is vacant or unoccupied beyond the period of ten consecutive days.

"This company shall be deemed to have assented to the amount of the loss claimed by the insured in his preliminary proof of loss, unless within twenty days after the receipt thereof . . . the company shall notify the insured in writing of its partial or total disagreement with the amount of loss claimed by him and shall notify him in writing of the amount of the loss, if any, the company admits on each of the different articles or properties set forth in the preliminary proof or amendments thereto.

"If the insured and this company fail to agree, in whole or in part, as to the amount of loss within ten days after such notification, this company shall forthwith demand in writing an appraisement of the loss or part of loss as to which there is a disagreement and shall name a competent and disinterested appraiser, and the insured within five days after the receipt of such demand and name, shall appoint a disinterested appraiser and notify the company thereof in writing, and the two so chosen shall, before commencing the appraisement, select a competent and disinterested umpire. . . .

"A loss hereunder shall be payable in thirty days after the amount thereof has been ascertained either by agreement or by appraisement, but if such ascertainment is not had or made within sixty days after the receipt by the company of the preliminary proof of loss, then the loss shall be payable in ninety days after such receipt."

1. It is contended by appellant that the findings to the effect that the insured building was totally destroyed by fire "while occupied as a private dwelling" is not supported by the evidence. The premises were under lease by plaintiff to one Moses C. Tribble, who testified that he had been living in the house with his family for "something over a year" as a "dwelling-house"; that on September 28, 1913, he commenced to move his family and household effects; that he did not "move all his household effects or personal property from the house before it was destroyed by fire"; that he did not sleep in the house after the night of September 27th. He was asked what remained at the place after he removed his wife and was there on the night of the 30th of September. "A. I know there was stuff there left in my care. The stuff didn't belong to me, left in my care. Had some household things, junk there that would naturally accumulate with farming, and so it was there, and what there was I could not say. I would not confine myself down. Q. Was there any furniture there? A. No, sir. . . . Q. And then all there was left there was some chickens running around the yard and this accumulation of things? A. Yes, sir." He testified that he was at the premises about 4 o'clock in the afternoon of September 30th. "I had some chickens there and I was trying to catch these chickens and get them and take them and move them up to the place where I was moving to. Q. Did you at any time notify Mr. Covey that you were about to move from the

premises? A. Well, I think, yes. I think I told Mr. Covey that I intended to move but as to the exact day that I told Mr. Covey, I could not say. Q. As to the time when you would move? A. Yes, because it was on account of the health of my wife. She was down with rheumatism and I didn't know really when I could move. Q. Yes. Who had the key to the dwelling at the time of the fire? A. The key was in my possession."

Plaintiff testified that he was at the premises on September 30th, the day before the fire. "Q. Was there anybody upon the premises at that time? A. Yes, sir; Mr. Tribble was there. . . . Q. Was he a tenant of the property? A. Yes, sir. Q. Your tenant? A. Yes, sir. Q. And what were the conditions there with reference to whether or not the property was occupied at the time that you were there? A. It was occupied, yes; the man had his stuff there, was hauling some of his stuff off, and catching his chickens and one thing and another. His poultry was there. . . . Q. Do you know whether any of his household goods were still upon the property? A. Yes, we went through the house and seen some boxes and household things there. Don't know what he had boxed up, something another. . . . Q. Had Mr. Tribble at that time turned over the key to the premises? A. No, sir." On cross-examination he testified that Tribble told him he was moving off. "Q. But Mr. Tribble told you, did he not, that he was going to move out that day? A. No, sir; didn't say he was going to move that day. Q. Never said so? A. He said he was moving out. Q. As a matter of fact, he did move out that day? A. I don't know. No, sir, I don't think so." He testified that Tribble had been in possession of the premises for "something over a year"; that he was paying $75 per year and had paid his rent in full; that he learned that Tribble was going to move away "somewhere near the 30th, about that day I think is the first I can remember." It was admitted that the "building was totally destroyed."

We think the situation at the time the fire occurred, to wit, 2 A. M., October 1st, briefly stated, was as follows: Plaintiff's tenant was not in actual physical possession of the premises, but had the right of possession and was still in the act of moving his effects therefrom; that he was the recognized tenant and retained possession of the keys to the building, and that he had not surrendered possession to his landlord; that

his intention was to reside elsewhere, and to that end had removed his family and most of his household goods, but his intention was to return to get what remained of his personal property.

The court found: "It is not true that at the time of the destruction by fire of said premises, to wit, on the first day of October, 1913, said premises described therein and so insured by said policy of fire insurance were not occupied only as a private dwelling, and it is not true that said premises" at said time were "wholly or at all vacant and unoccupied, or vacant or unoccupied." The contention of appellant is that this finding is unsupported by the evidence. The cases are numerous in which the terms "occupied," "vacant," "occupied and vacant," "occupied or vacant," are defined, and are by no means harmonious. All agree that existing conditions when the policy is issued have much to do with arriving at the intention of the parties. A different construction is given to these terms in case of loss by fire where the premises were by the insurer known to have been occupied by a tenant when insured, as was the case here, from that given where the insured was the owner and the occupant. Also consideration is given to the character of the premises and the use to which they are being put. In the case of *Omaha Fire Ins. Co.* v. *Sinnott*, 54 Neb. 522, [74 N. W. 955], the policy provided that the insured house was and should continue to be occupied, and it was claimed that this warranty was broken by reason of the house becoming unoccupied and continuing to be vacant before the fire. Said the court: "The evidence most favorable to this contention was, in effect, that while the policy was in force, to wit, about July 11, 1894, the owner of the insured property notified her tenant to vacate it; that immediately thereafter the tenant began to remove his furniture to another house, to which he went with his family. When the fire took place, however, he had not yet removed his cook-stove and some other personal property. Under these conditions, we cannot say that the jury improperly concluded, from a consideration of the evidence, that the house was not occupied at the time of the fire." In cases of tenancy, it is reasonable to assume that the parties contemplated that some space of time might necessarily elapse after the tenant's family had moved from the premises before the tenant could remove all his household goods or possession could be given

to the landlord or to another tenant.   In the case of *Norman*
v. *Missouri etc. Ins. Co.,* 74 Mo. App. 456, a distinction is
drawn between the terms "vacant" and "unoccupied."   In
that case the tenant had, on the evening of October 5th, taken
his family to a neighborhood house and had removed a part
of his furniture, leaving a part in the building, but retaining
the keys and possession until he should have time the next
day to remove the remainder of his household effects.   During the night of the 5th and 6th, at about 1 o'clock in the
morning, the building and contents were destroyed by fire.
The court held the company liable notwithstanding the provision of the policy that "as soon as buildings become vacant
the insurance shall be void," and that the building was not
vacant.

*Weidert* v. *State Ins. Co.,* 19 Or. 261, [20 Am. St. Rep.
809, 24 Pac. 242], was a case where one McNett, a tenant,
moved into the premises in April and lived there until June
15th or 20th, when he moved away, but a hired man or some
member of the family "was there at the house every day to
see if things were all right . . . , that they went down there
to see that nothing was destroyed."   The fire occurred on
the night of July 9th.   The court held that conceding to the
fullest extent all the facts that this evidence tends to prove,
no occupancy of the premises was shown after McNett moved
out.   The provision of the policy involved was as follows:
". . . or if any change shall take place in the title, possession,
or occupancy" without immediate notice to the company and
its consent obtained, "this policy shall . . . be null and void."
Several cases are cited in the opinion supporting the view
there taken, but, as in the principal case, the occupant seems
to have moved away from the premises and was using the
former dwelling as a sort of place of storage for some portion
of his household effects.

In *Norman* v. *Missouri etc. Ins. Co.,* 74 Mo. App. 456, the
court said: "Removal was *in fieri,* not complete.   If the tenant had, on the evening of October 5th, taken his family to a
neighbor's house, leaving his household goods packed and
ready for moving the next day, could it with any show of
reason be said that the building was vacant?   Surely not.
Neither could it be said to be vacant if the tenant had taken
away a portion and left a portion for removal the following
day.   The house would not in either event be vacant, though

unoccupied.'' The court seems to have held to the strict meaning of ''vacant,'' a distinction which we do not think is unbending or may be arbitrarily applied.

The circumstances existing at the time must necessarily be factors in determining whether or not the building is unoccupied or vacant. These terms may, therefore, be treated as synonymous in their meaning. This was shown in *Herrman* v. *Adriatic Ins. Co.*, 85 N. Y. 162, [39 Am. Rep. 644], a case in which it was held as a general proposition that ''for a dwelling-house to be in a state of occupation, there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage.''

*Cummins* v. *Agricultural Ins. Co.*, 5 Hun (N. Y.), 554, was a case where the policy provided that if the dwelling-house became vacated by the removal of the owner or occupant, ''the policy shall be null and void until the written consent of the company at the home office is obtained.'' It was held that the provision, ''vacated by the removal of the owner or occupant,'' means an abandonment of the house as an actual place of residence, permanently or temporarily. A mere temporary absence of the family from the house for a night or a day would not be such a removal.''

In *Bennett* v. *Agricultural Ins. Co.*, 50 Conn. 426, the insured building was occupied by a tenant, and the policy provided that if the dwelling should ''cease to be occupied as such . . . the policy shall cease and be of no effect.'' The proof showed that the house was occupied about a month and a half in the spring of 1880, that it was thereafter again occupied, and that the tenant moved out about 6 o'clock in the evening on the day preceding the fire, and the house remained unoccupied until it was destroyed by fire, about 2 o'clock the next morning. ''This,'' said the court, ''was clearly a violation of this condition of the policy.'' That case is easily distinguishable from the present case. There was a complete abandonment of the dwelling, the tenant leaving nothing in the house and having surrendered possession completely and having no occasion to return for any purpose. It was not a temporary absence, but an actual giving up of the premises. The length of time the building was unoccupied was, therefore, an immaterial factor.

. A tenant moved out of an insured dwelling on Tuesday and on Wednesday morning the owner took possession, and with his servants, began cleaning it and moving in goods, and were continuously so engaged during the working hours of each day until Friday evening; intending that the family should be fully domiciled there Saturday, but meanwhile lodging and taking their meals elsewhere. On Friday night the house was burned, and it was held that the policy had not become void on the ground of vacancy or nonoccupancy. (*Eddy* v. *Hawkeye Ins. Co.*, 70 Iowa, 472, [59 Am. Rep. 444, 30 N. W. 808].) ''There is no case to which our attention has been called,'' said the court, ''which holds that a house is vacant or unoccupied by the mere fact of the physical absence of the occupants for a day or night.'' The case of *Shackleton* v. *Sun Fire Office*, 55 Mich. 288, [54 Am. Rep. 379, 21 N. W. 343], is cited in the opinion. In that case the tenant vacated the house June 19th, and the owner took possession, put her furniture in the building, but, for what seemed to be good reasons, she did not take her meals nor lodge in the house, and it was destroyed by fire on July 4th. It was held that the house was not vacant or unoccupied. within the meaning of the contract. Said the court: ''Nothing apparently was wanting to complete personal possession, except that she lodged and took her meals at her father's, a few rods off. Those facts were not conclusive against her occupancy.''

We can see no reason why the rule should be different where a tenant is moving into a house than where he is moving out. In both cases he is in possession of the house and has some or all of his goods there, but for sufficient reasons he finds it necessary temporarily to lodge elsewhere while moving in or moving out, as the case may be. No fixed and unbending rule seems to be deducible from the adjudicated cases. The courts take into consideration all the circumstances and attribute such intention to the parties in entering into the contract as would appear consonant with reason. As was said in the Michigan case last above referred to, the facts in this case ''are not conclusive against the tenant's occupancy.''

2. The court found that defendant did not serve its notice of disagreement or demand for appraisement within the time required by the policy, and that plaintiff complied with and

performed all of its terms on his part. This finding is challenged. The policy provided that the company "shall be deemed to have waived assent to the amount of the loss claimed by the insured in his preliminary proof of loss, unless within twenty days after the receipt thereof . . . the company shall notify the insured in writing," etc. (see provision *supra*). Defendant, at San Francisco, mailed a letter to plaintiff, residing at Whitmore, Shasta County, on the twentieth day after the receipt of proof of loss, which letter was received· by plaintiff two days later. Defendant contends that "the mailing of the notice of disagreement within the twenty days is sufficient under the terms of the policy even though it is not received until after the expiration of the twenty days." Respondent contends that where, as here, the loss was total and so conceded, there was no occasion for arbitration, and appellant was not prejudiced by the ruling of the court. However this may be, we think defendant failed to give the notice contemplated by the policy. In *Winchester* v. *North British etc. Co.*, 160 Cal. 1, [35 L. R. A. (N. S.) 404, 116 Pac. 63], the defendant made demand for the appointment of appraisers, but the notice did not reach plaintiff's attorney in fact until after the expiration of sixty days. It was held that "the failure to serve such notice upon the insured within sixty days after service of proof of loss amounted to a waiver." The policy read: "The sum for which the company is liable pursuant to the policy shall be payable sixty· days *after due notice*," etc. The question there was as to the time when the action could be brought. The language of the present policy is, "unless within twenty days after the receipt" of proofs of loss, the company *"shall notify* the insured,'' etc.

It appears from the transcript in the Winchester case that due proof of loss was made on May 14, 1908, and on July 8th, within sixty days after proof of loss, defendant duly posted a letter addressed to plaintiff's attorney in fact, giving notice of its disagreement, etc. The court found that said demand "was received by plaintiff's attorney in fact on the eighteenth day of July, 1908, and more than sixty days after the service of said proof of loss." In the present case the notice was received two days too late; in the Winchester case four days too late. We think the Winchester case decisive of the point.

3. Defendant was equally in default in sending its demand for an appraisement. Proof of loss was filed with defendant on November 19, 1913. On February 16, 1914, defendant mailed a letter at San Francisco, directed to plaintiff at Millville, Shasta County, notifying plaintiff that it demanded an appraisement of the loss. This notice was received by plaintiff on February 20, 1914, which the court found "was more than ninety days after the said preliminary proof of loss was received by said defendant." The policy provided: "If for any reason not attributable to the insured or to the appraiser appointed by him, an appraisement is not had and completed within ninety days after said preliminary proof of loss is received by this company, the insured is not to be prejudiced by the failure to make an appraisement and may prove the amount of his loss in an action brought without such appraisement." Not having received notice in time, plaintiff was not compelled to submit to an appraisement of the loss, and the case stands as though no appraisement was had. Defendant recognized the policy as still in force after the action was first commenced by demanding an appraisement, and we do not think plaintiff is now estopped from claiming that the demand for arbitration was not made in time.

Defendant admitted a liability of $290.91 in its letter of December 8, 1913, and also in its answer. The principal question of fact was as to the actual loss, defendant claiming that it did not exceed the above amount. Other questions are matters largely of technical law. The loss was total, and there was evidence sufficient to support the finding that "the actual cash of plaintiff's interest in said dwelling-house was at the time of said loss on the first day of October, 1913, more than the said sum of eight hundred dollars."

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 27, 1916.