## Continental Insurance Company of New York v. Dunning et al.

(Decided May 9, 1933.)

GORDON, LAURENT & OGDEN, T. M. GALPHIN, Jr., and NUNN & WALLER for appellant.

VERT C. FRASER for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The decisive question presented by this appeal is the right of the insured to recover on an insurance policy containing an agreement and stipulation that, if any of the buildings described are now vacant, unoccupied, or uninhabited, or shall become vacant, unoccupied, or uninhabited for a period exceeding ten days, without written consent of the company, the policy shall be null and void.

Effie Dunning and Leslie Dunning owned a tract of land situated in Crittenden county, Ky. On the 17th

day of September, 1928, the Continental Insurance Company of New York, for a premium of $62.70, payable in installments, $15.68 payable on the 1st of October, 1929, and each year thereafter until paid in full, issued and delivered to Effie and Leslie Dunning policy insuring them against loss by fire, $650 on the dwelling house; $50 on smoke and produce house; $300 on barn; $50 on grain and seed; and $50 on hay and feed while in the barn or used on the premises. The barn and other buildings were used in connection with the dwelling. All of the insured property was located on a 75-acre farm.

Subsequent to the issuance of the policy, the valuation of the property and the premium were reduced by consent of the parties. The value of the property after it was reduced was $552 on the dwelling; $40 on the smoke and produce house; $240 on the barn; $50 on grain and seed; and $50 on hay and feed. The installment premium was reduced to $12.59. At the time the policy was issued, the property was occupied by a tenant who moved off September 17 or 18, 1931. Leslie Dunning at that time was in the employ of the Illinois Central Railway Company, and had a run on that road, and was away from home. His family was composed of himself and wife, Effie Dunning. It was their intention to move into the dwelling and occupy it as their home. Mrs. Dunning carried and stored in the dwelling a dining table, chairs, two small tables, rugs, linens, a few dishes, and other things. The tenant's wife was a sister of Mrs. Dunning, and, when she and her husband moved, they left some of their household and kitchen furniture. Mrs. Dunning's sister and her husband moved to property about one-half mile from the dwelling, barn, and outhouses owned by Leslie and Effie Dunning. Mrs. Dunning's mother made her home at Blackford, Ky. Dunnings owned cows and chickens, hogs and calves, which were kept on the premises on which the buildings were located. Mrs. Dunning went to the farm and the dwelling and other buildings every day, where she spent the greater portion of her time looking after the cows, chickens, hogs, and calves, and while at the dwelling she would can fruit and vegetables. Her sister also put up canned fruit at the dwelling owned by the Dunnings. Mrs. Dunning watched the place and took care of the house and things which they kept in the house and on the farm. She spent with her nephew

two nights in the dwelling between September 17th or 18th and the date on which the property was destroyed by fire, on the night of October 23d. One of the nights she remained at the dwelling was about a week after her sister and husband moved off; the second night was about the 1st of October. From the 1st of October until the 23d of October, the night on which the property was burned, the property was continuously unoccupied at nights, and during the day only at such times as she was present, looking after the cows, chickens, hogs, and calves, and canning fruit and vegetables, except on Sunday before the fire Mrs. Dunning where some of her friends were at the dwelling house and prepared and ate dinner. The day before it was destroyed she spent the afternoon at the dwelling, house cleaning. The fire occurred shortly after midnight on October 23d. No one was there at the time of the fire. Neither of the Dunnings nor any one else had slept in the dwelling from October 1st to October 23d. Neither the cause nor the origin of the fire is disclosed by the evidence. The facts showing the occupancy or nonoccupancy of the property are not disputed. The company failing to pay the policy, this action was instituted to recover the reduced valuation as we have stated it.

Among other defenses, the company interposed the provision, rendering the policy void if it was unoccupied or uninhabited for ten consecutive days next before the fire. A trial before a jury resulted in a verdict in favor of the Dunnings for the full amount of the policy. The insurance company is here insisting that, accepting the proven facts, the property was unoccupied or uninhabited, within the meaning of these terms as they are used in the policy.

Where a policy of insurance contains no provision respecting the property becoming vacant, unoccupied, or uninhabited, but carries a clause prohibiting the increase of the risk, in such a case, if the property becomes vacant, unoccupied, or uninhabited, and thereby the risk is increased, then the insurer must allege and prove that the risk was so increased to avoid the policy on such a ground. But, where the policy carries a clause providing a forfeiture if the property becomes vacant, unoccupied, or uninhabited, without the consent of the insurer, for ten days, or any other definite period of time, it is not required to allege or prove that the status increased the risk or hazard. A like provision

238

of a policy has often been held by this court as binding on the parties, and, when relied on as a defense, if the facts show that the property was unoccupied or uninhabited ten consecutive days next before its destruction by fire, it is our duty to enforce such a provision according to its terms. Burner's Adm'r v. German-American Insurance Co., 103 Ky. 370, 45 S. W. 109, 20 Ky. Law Rep. 71; Robinson v. Ætna Ins. Co., 38 S. W. 693, 18 Ky. Law Rep. 865; Thomas, Trustee, v. Hartford Fire Ins. Co., 53 S. W. 297, 21 Ky. Law Rep. 914; Continental Ins. Co. v. Simpson, 220 Ky. 167, 294 S. W. 1048. The meaning of the terms "vacant," "unoccupied," or "uninhabited" is a question of law for the court, but whether at the time of the destruction of a building by fire it is "vacant," "unoccupied," or "uninhabited" is one of fact for the determination of a jury. Schuermann v. Dwelling House Ins. Co., 161 Ill. 437, 43 N. E. 1093, 52 Am. St. Rep. 377. Each case must be determined on its own facts and circumstances. A building may be vacant within the meaning of the term "vacant," though "far from being empty of everything but air." Robinson v. Mennonite M. F. Ins. Co., 91 Kan. 850, 139 P. 420, 422. "Vacant" is not synonymous with the term "unoccupied." However, the terms may be, and often are, treated as synonymous. Covey v. National U. F. Ins. Co., 31 Cal. App. 579, 161 P. 35. It is not necessary that property be both vacant and unoccupied, without the consent of the insurer, to entitle the insurer to avail itself of a condition of the policy providing a forfeiture if it becomes vacant, unoccupied, or uninhabited. Cyclopedia of Insurance Law (Couch) vol. 4, sec. 970f, p. 3415. The term "unoccupied" as used in an insurance policy must be construed in the sense adopted to the occasion of its use and the subject-matter to which it is applied. The occupancy of a building by living human occupants is a protection against a fire hazard to which the insurer is entitled to contract for at the time of the issuance of the policy, and it is a protection which the insured may contract to afford the insurer. Such a prohibitive clause is beneficial to both the insurer and the insured, in that it enables the insurer to determine the rate, and it affords the insured the benefit of a lower rate, of insurance. Agricultural Ins. Co. v. Hamilton, 82 Md. 88, 33 A. 429, 30 L. R. A. 633, 51 Am. St. Rep. 457. A use and occupancy which will satisfy such a provision of

the policy must be of such character as ordinarily pertains to the purpose to which the property is adapted or devoted, as described in the policy. Burner's Adm'r v. German-American Ins. Co., 103 Ky. 370, 45 S. W. 109, 20 Ky. Law Rep. 71. A dwelling house means a place of abode—a habitation—a house occupied, or intended to be occupied, as a residence. "Occupation of a dwelling house primarily implies a living in it; and consequently a fair and reasonable interpretation of the 'vacant and unoccupied,' when used to describe a dwelling house, would seem to be that the house is without an occupant,—without some person living in it. An actual use of the house as a place of abode or habitation is what the insurer contemplates and what the policy designs to secure. * * * It is the very situation against the hazards of which the company clearly undertook to guard itself, by an express stipulation and condition inserted in the very contract upon which the suit is founded." Agricultural Ins. Co. v. Hamilton, 82 Md. 88, 33 A. 429, 430, 30 L. R. A. 633, 51 Am. St. Rep. 457.

"Occupancy," when used in reference to a dwelling house, means actual use of the premises by one or more human beings as their place of abode. May on Insurance, 249a; Joyce on Insurance, 2225; Burner's Adm'r v. German-American Ins. Co., supra. In Ostrander on Fire Insurance, sec. 144, it is written:

"This distinction (between vacant and unoccupied) is perhaps more clearly marked in the case of a dwelling house from which the family has removed, leaving a portion of their household goods in the building. It will not be vacant, but occupation is at an end when it is no longer the place of abode of any living person. A temporary absence of the family will not avoid the policy. They may absent themselves for purposes of health, pleasure, business or convenience, for any reasonable period, if they go with the intention of returning again, and the building insured continues to be their home. This general proposition however, must be understood with certain special qualifications. The absence must be only temporary, and if extended beyond a reasonable time the insurer will be relieved."

This statement of the law was quoted with approval by this court in Thomas, Trustee, v. Hartford Fire Ins. Co., 53 S. W. 297, 298, 21 Ky. Law Rep. 914,

and emphasized with the statement, "It was nobody's home."

The authorities without a single exception agree that a dwelling house will not be regarded as occupied unless it is the home or dwelling place of some person living and sleeping there habitually, not every night, but usually and ordinarily, who, when temporarily absent, returns to it as a place of abode. Snyder v. Fireman's Insurance Company, 78 Iowa, 146, 42 N. W. 630; Herrman v. Adriatic Fire Ins. Co., 85 N. Y. 162, 39 Am. Rep. 644; Williams v. Pioneer Co-Operative Fire Ins. Co., 171 N. Y. S. 353, 183 App. Div. 826; Sexton v. Hawkeye Ins. Co., 69 Iowa, 99, 28 N. W. 462; Feshe v. Council Bluffs Ins. Co., 74 Iowa, 676, 39 N. W. 87; Gibbs v. Continental Ins. Co., 13 Hun (N. Y.) 611; Union Trust Co. v. Philadelphia Fire & Marine Ins. Co., 127 Me. 528, 145 A. 243; Barry v. Prescott Ins. Co., 35 Hun (N. Y.) 601. In Union Trust Co. v. Philadelphia Fire & Marine Ins. Co., the farm was occasionally returned to, but the dwelling was not occupied. It was held that such dwelling was unoccupied within the fire policy provision against vacancy.

In Snyder v. Fireman's Ins. Co., supra, it was held that ordinarily a dwelling is unoccupied when no one is living in it and having it as a home, a place of residence.

In Barry v. Prescott Ins. Co., 35 Hun (N. Y.) 601, the insured dwelling was rented to a tenant who left the premises, and the owner immediately prepared to occupy the house, and to that end had certain repairs made and removed his furniture to it, but had not commenced living in it when the house was burned. It was held that the occupancy of a dwelling house required there must be present in it human beings as their customary place of abode, not absolute, uninterrupted, and continuous, but must be a place of return and habitual stoppage, and the purpose of the owner to live in and occupy it and the taking of all preliminary steps to occupy, and visiting, it, was not sufficient, and that the insurer was not liable for loss from the destruction by fire in the circumstances.

Measuring the facts in the present case by the principles we have reiterated, the property was unoccupied as a dwelling house at the time of the fire, within the term as it is used in the policy.

This brings us to a consideration of that portion of the policy covering the barn, smokehouse, grain, hay, and feed. The contract of insurance, the provision under consideration as it concerns the dwelling, the barn, the smokehouse, and other buildings, is inseparable. The clause providing for forfeiture if the insured buildings become vacant or unoccupied applies, not only to the dwelling, but the barn, smokehouse, and other buildings and contents covered by the policy. The occupancy of a dwelling house determines the character of the occupancy of the barn and other outbuildings used in connection with it. Occupancy as it applies to such buildings implies the actual use of the dwelling place, and such use of the barn and outhouse as is ordinarily incident to the barn and outbuildings belonging to and usual in connection with the occupied dwelling, or at least something more than the use of them for mere storage. The insurer has the right by the terms of the policy to the care and supervision which are involved in such occupancy of the dwelling in connection with which the barn and other outhouses are used. Ashworth v. Builders' Mut. Fire Ins. Co., 112 Mass. 422, 17 Am. Rep. 117; Keith v. Quincy M. Ins. Co., 10 Allen (Mass.) 228; American Ins. Co. v. Padfield, 78 Ill. 167; Fitzgerald's Adm'x v. Conn. Fire Ins. Co., 64 Wis. 463, 25 N. W. 785. A contract of insurance on a barn and its contents, if forfeited because of nonoccupancy of the dwelling, is void as to the barn and outbuildings used in connection with the dwelling. The same ground of avoidance applies to the contents of the outbuildings. Niagara Fire Ins. Co. v. Layne, 162 Ky. 665, 172 S. W. 1090; Ohio Valley Fire & Marine Ins. Co. v. Skaggs, 216 Ky. 535, 287 S. W. 969; New York Underwriters' Ins. Co. v. Ray, 246 Ky. 105, 54 S. W. (2d) 627. Viewing the right of the insured to recover on the policy for the barn, smokehouse, and contents of the barn, in the light of these cases, the nonoccupancy of the residence by the insured entitled the insurance company to avail itself of the forfeiture provision of its policy as to these buildings and contents because of nonoccupancy of the dwelling.

The insurance company was entitled to a directed verdict, and for this reason the judgment is reversed, without a consideration of the other questions presented in brief of counsel, for proceedings consistent with this opinion.