## Home Insurance Company of New York v. Steinberg.

(Decided March 13, 1934.)

F. M. DRAKE for appellant. .
LAWRENCE S. GRAUMAN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellee, Joseph Steinberg, was the owner of a two-story brick dwelling house on Thirty-Fifth street, in Louisville, Ky. He had the house insured in the sum of $1,750 against loss or damage by fire with the appellant, the Home Insurance Company of New York.

On March 31, 1932, the house was damaged by fire. The parties failed to agree on the question of the extent of the damage or loss as a result of the fire, and appellee instituted this suit in the Jefferson circuit court to recover on the policy.

The insurance company defended on two grounds: (1) That the policy was void because of vacancy of the house in violation of its provisions; and (2) because the assured was claiming damages in excess of the actual loss.

The house had been occupied by a tenant from the fall of 1931 up to January 18, 1932, when the tenant vacated the property, and it was not rented or occupied any more previous to the fire, March 31, 1932, except about 3 days, under the following circumstances: On January 30, 1932, a police officer called Fred P. Kissler, agent of appellee, Steinberg, and told him that there was a family occupying a shanty boat on the Ohio river and the river was rising and had become dangerous or unsafe for people to occupy the boat, and they would have to be moved out, and asked Kissler about moving them into the house in question. Kisselr suggested to the party to whom he was talking, that he come to his office and sign a lease and arrange about payment of the rents, but the person who was talking to Kissler insisted that it was an emergency and asked him if it would be all right to move into the house then and arrange for the lease and rent later, and Kissler consented to this

arrangement. However, no one called on Kissler to arrange for a lease or payment of rents, and Kissler did not go to the house or premises to ascertain whether or not any one was occupying the house, and there was nothing more said or done about the matter until after the fire, which occurred on March 31, 1932. After the fire, Kissler went to the neighborhood and made inquiry whether or not any one had occupied the house. He was told by some of the neighbors that some one had stayed in the house a few days in the latter part of January or early part of February, but had moved to another location. Kissler proceeded to go to the place to where the parties had moved, and there learned that a man named Matheny had lived in the house a few days about the time above indicated. After locating the house where Mr. Matheny lived, he proceeded to make inquiry relating to the occupancy of the house and also to collect rents for the time the house was occupied. Mr. Matheny was not at home, but Kissler talked to Mrs. Matheny, and she told him that they had occupied the house from January 30 to February 2, 1932, and promised him that the rents would be paid. Nothing more was said or done about the matter until April 26, following, Matheny went to Kissler's office, and paid him 50 cents for the three days he and his family had occupied the house.

The case was tried to a jury, and resulted in a verdict and judgment for appellee in the sum of $1,750, the amount sued for. Motion and grounds for a new trial were duly made and overruled, and this appeal results.

It is insisted for appellant that the three days' occupancy of the property by Matheny under the circumstances above stated was not such occupancy or tenancy as contemplated in the forfeiture clause of the policy (which provided that, if the house remained vacant for a period of 60 days, the policy would be forfeited), and therefore the court erred in failing to sustain its motion for a directed verdict for the appellant. To support its position, the case of Continental Ins. Co. v. Dunning, 249 Ky. 234, 60 S. W. (2d) 577, is relied on.

It is our view, however, that in the case, supra, a different state of facts exists. In that case the tenant moved out of the house, and the insured, owners of the property, stored some household goods in the house with

the intention of moving therein, and the insured's wife went to the house and premises every day to look after the cows, chickens, and other live stock, and to can vegetables, etc., but no one lived or slept in the house for a period of time exceeding the vacancy limit specified in the policy. This court held that the dwelling house was "unoccupied" within the meaning of the policy "because occupation of a dwelling house primarily implies a living in it; and consequently a fair and reasonable interpretation of the words 'vacant and unoccupied,' when used to describe a dwelling house, would seem to be that the house is without an occupant —without some person living in it. An actual use of the house as a place of abode or habitation is what the insurer contemplates and what the policy designs to secure."

In the case at bar, it is shown by Kissler, who was introduced by appellant, that Matheny lived in the house with his family and his belongings, occupying and using it as his home and place of abode for the period of time they lived there. It is further shown by Kissler that he told the person who was talking to him in behalf of Matheny that they would have to come to his office and sign a lease contract and pay the rents, but, on the insistence of the party that he permit Matheny to move in on that evening or night, and that they would see to the rents and lease later, Kissler permitted them to move into the property with the understanding and under those conditions. In the circumstances, it cannot be said that Matheny was not a tenant but only a wayfarer or trespasser. He moved into the property pursuant to the understanding with Kissler that the rents were to be paid later. Under these circumstances, Matheny was a tenant and "occupant" of the property as much so as if he had signed the lease and paid the rents in advance. The burden was on appellant to show that the house was vacant in the meaning of the insurance policy. It offered no proof on this point except that of Kissler, and his evidence more strongly tended to show that the house was occupied.

Appellant cites and quotes from a number of foreign cases, which, it is argued, sustain its position respecting the occupancy of the building. In Agricultural Ins. Co. v. Hamilton, 82 Md. 88, 33 A. 429, 431, 30 L. R. A. 633, 51 Am. St. Rep. 457, he quotes:

"It is not a mere casual or occasional sleeping in a

house that constitutes an occupancy of it. The element of a fixed abode is an essential ingredient of every concept of occupancy when applied to a dwelling house and the term 'unoccupied' is employed to express the directly opposite condition. * * * The insurance policy has a manifest reference to a continuous physical condition of the house as a habitation."

It is our view that the above quotation does not coincide with the facts of the case at bar. It is more in point with the Dunning Case, supra, which we have distinguished. In the case at bar, Matheny occupied the house 3 days and nights as his "place of abode and habitation." It was his home in every respect for the time he was there, so far as the record discloses. To the same effect see Barry v. Prescott Ins. Co., 35 Hun (N. Y.) 601.

The further complaint is made that the court erred in refusing appellant a new trial on the ground of newly discovered evidence. The alleged newly discovered evidence is, in effect, that, after the trial, Matheny made an affidavit that one Grimes, a friend of, a witness for, appellee, Steinberg, gave him $2, and told him to go to Kissler and pay the rent for the time he occupied the house. It is argued that the fact that Matheny paid no rent except with the money that appellee furnished him for that purpose is material to his tenancy or occupancy of the house. We cannot concur in this view. It is immaterial whether or not the rent was paid at all. It is commonly known that a number of tenants fail to pay their rents; but the payment is not material to occupancy, nor could it be material to the insurance risk. The occupancy of a building is required for the purpose of lessening the risk, and whether or not the tenant pay his landlord the rents could not possibly increase the risk assumed by the insurer.

In the instant case the question is whether or not Matheny occupied and lived in the house as a place of abode and habitation. It has been shown, as above stated, that he moved into the house with the permission of the agent of appellee with the understanding that the rents would be paid, and lived in and occupied the house for three days and nights as his only home or place of abode. It is our view that his occupancy of the house under the agreement to pay rent was such occupancy as

would satisfy the provisions of the policy, although he may have failed to pay the rent.

It is further insisted that the sum found by the jury was in excess of the actual damage or loss resulting to appellee by reason of the fire. Without entering into a detailed discussion of the evidence, it is sufficient to say that the evidence was, indeed, very conflicting on the question of the cost of repairing the building. It was testified by a number of carpenters and building contractor, introduced for plaintiff, appellee, all of whom seem to be well qualified to testify on the subject, that it would cost about $2,000 or more to repair the building by replacing the material and making such repairs to the extent caused only by the fire. On the other hand, a number of witnesses testifying for appellant, defendant below, placed the cost of such repairs at approximately $1,200.

It was shown by a number of witnesses for appellant that the house was in very bad condition. If their evidence is to be believed, it is doubtful that the house was worth the cost of repairing it, while other witnesses testifying for appellee stated that the house was in fairly good condition. The facts on these points relating to the cost of repairs and the condition of the building before the fire were submitted to the jury, which was peculiarly a question for its determination. It is our view that the evidence is sufficient to sustain the verdict, and we are unauthorized to disturb it.

It is further urged as a ground for reversal that the court erred in failing to sustain the request of counsel for appellant that the court instruct the jury to consider the depreciation of the building, resulting from the fact that the building, in being repaired, would be restored practically to the condition of the new building or better. The court refused this instruction on the ground that the instruction given covered that point. The instruction given by the court relating to the damages reads:

"(1) You will find for the plaintiff, Joseph Steinberg, and against the defendant, The Home Insurance Company, New York, in such sum as you believe from the evidence represents the difference between the fair and reasonable value of the building of plaintiff concerning which you have heard evidence, immediately before and immediately after

the fire referred to therein, such difference in value to be determined by the reasonable cost of repairing or restoring any damage or injury to said building caused solely by said fire to as good condition as it was immediately before said fire, your award to plaintiff not to exceed the sum of $1,750.00, with interest thereon at the rate of 6 per cent. per annum from May 9, 1932.''

Thus it will be noticed that the instruction only authorized the jury to find for plaintiff the sum or difference in the value of the building immediately before and immediately after the fire, such difference in value to be determined by the reasonable cost of repairing or restoring any damage or injury to the building caused solely by the fire to as good a condition as it was immediately before the fire.

The depreciation of the building existed immediately before the fire, and necessarily the jury had to take into consideration the depreciation in order to arrive at its value immediately before the fire. We think the language used in the instruction was sufficiently plain to inform the jury that the measure of damage was the difference in the value of the building, including depreciation, immediately before the fire and its value immediately thereafter. The jury could not have understood the court to mean that they would find for plaintiff the difference in value of the building when new and its value after the fire. The above instruction is in harmony with the rule enunciated in the case of Springfield Fire & Marine Ins. Co. et al. v. Ramey, 245 Ky. 367, 53 S. W. (2d) 560, and Southern Ry. in Kentucky et al. v. Kentucky Grocery Co., 166 Ky. 94, 178 S. W. 1162.

It is our conclusion that the instructions given are substantially correct, and the substantial rights of appellant were not prejudiced thereby.

Perceiving no error in the record prejudicial to the substantial rights of appellant, the judgment is affirmed.